UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOEL RIFKIN,

                Plaintiff,

      vs.

GLENN S. GOORD, et al.,

                Defendants.

**DEFENDANTS' APPENDIX TO LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

99-CV-6479L(B)

---

        Pursuant to Local Rule 56.1(d), the Defendants' Appendix consists of the following:

                **EXHIBIT 1:** Affidavit of Charles D. Steinman

                **EXHIBIT 2:** Affidavit of Glenn S. Goord

                **EXHIBIT 3:** Affidavit of Gail Hallerdin

Dated:   March 19, 2004
        Rochester, New York

                    ELIOT SPITZER
                    Attorney General of the
                     State of New York
                    Attorney for Defendants

                    _s/ Charles D. Steinman_
                    CHARLES D. STEINMAN
                    Assistant Attorney General
                     of Counsel
                    NYS Office of the Attorney General
                    144 Exchange Boulevard, Suite 200
                    Rochester, New York  14614
                    Telephone:  (585) 546-7430
                    Charles.Steinman@oag.state.ny.us

# EXHIBIT I

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOEL RIFKIN,

        Plaintiff,

    vs.

GLENN S. GOORD, et al.,

        Defendants.

**AFFIDAVIT**

99-CV-6479L(B)

---

STATE OF NEW YORK )
COUNTY OF MONROE ) ss.:

    CHARLES D. STEINMAN, being duly sworn, deposes and says that:

    1. I am an Assistant Attorney General, of counsel to Eliot Spitzer, Attorney General of the State of New York and, in that capacity, have represented the defendants in the above-captioned matter since its commencement.

    2. I make this affidavit upon personal knowledge in support of the defendants' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. More specifically, I make this affidavit to address this Court's previously expressed concern that the record with respect to the defendants' position that the claims set forth in the plaintiff's complaint are barred by the principle of collateral estoppel might not be complete (see Decision and Order, Feb. 8, 2002, Docket #25, p.5).

    3. On December 18, 2000, the plaintiff filed a motion to amend his complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure (see Docket #18).

4. On February 26, 2001, the defendants filed their opposition to the plaintiff's motion (see Docket #19, 20). The defendants argued that the amendment of the complaint would be futile since the claims in the complaint had been determined on the merits by the courts of New York State and, consequently, were barred by the principle of collateral estoppel.

5. On November 29, 2001, former Magistrate Judge William Bauer issued a Report and Recommendation with respect to the plaintiff's motion. Magistrate Judge Bauer denied the plaintiff's motion, agreeing with the defendants that the plaintiff was collaterally estopped from arguing that his constitutional rights had been violated as a result of his initial, and subsequently continued, placement in Administrative Segregation at the Attica Correctional Facility (see Report and Recommendation, Docket #23).

6. On February 8, 2002, this Court issued a Decision and Order in which it rejected that portion of Magistrate Judge Bauer's Report and Recommendation with respect to the collateral estoppel issue (see Decision and Docket #25). Among the reasons underlying the Court's decision was the Court's assertion that the record with respect to this issue may not have been complete (see Decision and Order, p.5).

7. In order to resolve the issue of the completeness of the record, on March 10, 2004, I went to the Law Library at the New York State Supreme Court, Appellate Division, Fourth Department, at 50 East Avenue in Rochester. I personally examined the Record on Appeal in the C.P.L.R. Article 78 proceeding entitled Rifkin v. Goord, which is reported at 273 A.D.2d 878 (4th Dept. 2000).

8. According to both the officially bound version of the Record on Appeal and the microfiche version thereof, the only record maintained by the Appellate Division consists of the Brief and Appendix for Appellant and the Brief for Respondent. Despite diligent efforts to locate the full record on appeal, both the law librarian and I were unable to do so. In my opinion, based upon thirty years of practice in the courts of the State of New York, this record has either been lost or misplaced by the Appellate Division.

9. Despite the foregoing, it is clear that a record on appeal had to have been filed in that proceeding. This conclusion is compelled by the law of the State of New York (22 N.Y.C.R.R. §1000.4) and confirmed by the fact that specific page references to the Record on Appeal are made in the briefs of both the petitioner and the respondent.

10. Based upon my belief that such a record exists, I requested that the file maintained by the Office of the New York State Attorney General with respect to this state court proceeding be retrieved from our archives and delivered to me. I have personally examined this file and have located the Record on Appeal, as stipulated to by the parties to that proceeding. I have compared the pages in this record with the references thereto in the parties' briefs. Based upon this comparison, I affirm that the documents which are submitted in support of this motion, and are annexed hereto as exhibits, constitute the complete record in the Article 78 proceeding entitled *Rifkin v. Goord*.

11.  I respectfully submit that the Court now has before it the entire record in the

*Rifkin v. Goord* Article 78 proceeding, consisting of the parties' briefs and the Record on

Appeal.


CHARLES D. STEINMAN

Sworn to before me this
12th day of March, 2004

Notary Public

MARILYN E. SCHLEYER
Notary Public, State of New York
Qualified in Orleans County
No. 6045523
Commission Expires: 7/31/20 06

# EXHIBIT A

DOCKET NO. CA 99-3473

TO BE SUBMITTED.

STATE OF NEW YORK       :     SUPREME COURT
APPELLATE DIVISION     :     FOURTH JUDICIAL DEPARTMENT

---

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

      Appellant,

  -v-

GLENN GOORD, Commissioner,
Department of Correctional Services,

      Respondent.

---

## BRIEF AND APPENDIX FOR APPELLANT

Wyoming County Index No. 18,480

---

NORMAN P. EFFMAN
Attorney for Appellant
Executive Director
WYOMING COUNTY-ATTICA
 LEGAL AID BUREAU
14 Main Street
Attica, New York 14011
(716) 591-1600

JERRY M. ADER, Of Counsel

RECEIVED
NYS OFFICE OF THE ATTORNEY GENERAL

DEC 20 1999

APPEALS BUREAU DOCKET CLERK
ALBANY, NEW YORK 12224

TABLE OF CONTENTS

Page

QUESTION PRESENTED . . . . . . . . . . . . . . . . . 1

NATURE OF THE CASE . . . . . . . . . . . . . . . . .2

FACTS . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . 12

(i)

TABLE OF CITATIONS

Page

Matter of Curle v. Ward,
  46 N Y 2d 1049 . . . . . . . . . . . . . . . 10

McClary v. Coombe,
  __ F Supp __ (Western District of NY
              April 30, 1998 . . . . . . . . . 10

Matter of Doe v. Coughlin,
  71 N Y 2d 48 . . . . . . . . . . . . . . . 8

Hewitt v. Helms,
  459 U S 460 . . . . . . . . . . . . . . . .9

McGinnis v. Royster,
  410 U S 263 . . . . . . . . . . . . . . . .8

New York State Constitution,
  Article 1 Section 6 and 11 . . . . . . . . . . 5

U.S. Constitution Amendment 14 Section . . . . . 5

7 N.Y.C.R.R. Section 301.4(b) . . . . . . . . . 5, 7

7 N.Y.C.R.R. Section 330.2(b) . . . . . . . . . 6

7 N.Y.C.R.R. Section 303 . . . . . . . . . . . 6

7 N.Y.C.R.R. Section 301.5 . . . . . . . . . . 7

7 N.Y.C.R.R. Section 300.2(b) . . . . . . . . . 7

7 N.Y.C.R.R. Section 330.4 . . . . . . . . . . .7

## QUESTION PRESENTED

Did the lower court err in finding that the regulations applied by the Respondent did not violate Appellant's constitutional rights?

## NATURE OF THE CASE

This is an appeal from a Memorandum and Judgment of the Wyoming County Supreme Court (Dadd, T.A.J.S.C.) dated October 20, 1998 and entered on October 23, 1998 (R-52-61).*

On June 1, 1998, the Wyoming County Supreme Court (Dadd, T.A.J.S.C.) granted an Order to Show Cause upon the petition prepared by Appellant's counsel. It was made returnable at a Special Term of the above court held on July 29, 1998 at the Wyoming Correctional Facility Annex.

After several adjournments at the request of the Respondent, they filed an Answer dated September 4, 1998.

A hearing was held in the lower court on September 9, 1998. Following due consideration, the Honorable Mark H. Dadd issued his written decision converting the petition to an action for a declaratory judgment and finding no violation of Appellant's constitutional rights and denying Appellant's petition. A Notice of Appeal was filed on December 3, 1998.

On October 27, 1999, this Court granted Appellant permission to proceed as a poor person status on this appeal.

---

* Numbers in parentheses preceded by "R" refer to pages of the Record on Appeal.

FACTS

On February 9, 1996, Correction Lieutenant Bartz authored an

administrative segregation recommendation for Appellant (R-16).  Lt. Bartz gave the

following reasons for his recommendation:

> "Due to the notoriety, publicity and serious nature
> associated with inmate Rifkin's criminal convictions,
> the introduction of Rifkin to general population would
> be disruptive and would not be conducive to maintaining
> the integrity of security which is necessary at this facility.
> The safety and well being of Rifkin is also a strong
> consideration in this recommendation."

The required Superintendent's hearing was held on March 8, 1996, before

Commissioner's Hearing Officer Gail Hallerdin.  Following that hearing, the

Commissioner's Hearing Officer agreed with the recommendation and placed Appellant in

administrative segregation (see Appellant's counsel's letter of 7/15/98 with attachments,

attached to this appeal as Exhibit A). * In her statement of evidence relied upon, the

Commissioner's Hearing Officer stated in part that testimony produced at the hearing

revealed that Appellant could be more easily protected in the isolation found in

administrative segregation status that was not found in involuntary protective custody

status or protective custody status.

On December 3, 1997, while still confined in administrative segregation

status, Appellant filed a number of grievances through the Attica Correctional Facility

---

* Counsel's July 15, 1998 letter to the court in this matter was inadvertently not included
in the Record on Appeal.

Inmate Grievance Program.  These grievances were attached to Appellant's petition as

Exhibit "B" (R-17-25).  One of the issues raised in Appellant's grievance was that

Respondent was acting in an arbitrary manner in its finding that he is an administrative

segregation status inmate and not an involuntary protective custody status inmate, thereby

depriving him of certain privileges that would be available to inmates under the less

restrictive involuntary protective custody status.  Appellant claimed that such unequal

treatment violated the federal and state constitutions' guarantee of equal treatment under

the law and due process.

Appellant's grievances were denied by the Respondent.   On January 21,

1998 the Central Office Review Committee stated that the "facility administration is in

compliance with Department policy regarding administrative segregation" (R-28).

ARGUMENT

THE LOWER COURT ERRED IN FINDING THAT THE
REGULATIONS APPLIED BY THE RESPONDENT DID
NOT VIOLATE APPELLANT'S CONSTITUTIONAL
RIGHTS.

**<u>Due Process and Equal Protection</u>**

Both the State and Federal Constitutions guarantee that no persons shall be
deprived of "life, liberty or property" without due process of law nor be denied equal
protection of the laws (see U.S. Constitution, Amendment 14 Section I; New York State
Constitution, Article 1 Section 6 and 11).

Respondent's original recommendation that Appellant be placed in
administrative segregation in 1996 stated that Appellant's placement in the general
population of the prison "would be disruptive and would not be conducive to maintaining
the integrity of security". Respondent's regulations for admission into administrative
segregation require that the hearing officer must find that "the inmate's presence in general
population would pose a threat to the safety and security of the facility" (R-16) (see 7
N.Y.C.R.R. Section 301.4[b]).

Correction Lieutenant Bartz' recommendation also stated that "the safety
and well being of Rifkin is also a strong consideration in this recommendation" (R-16).
Respondent defines an involuntary protective custody inmate as follows:

"An inmate who may be a potential victim or a

-5-

> witness likely to be intimidated, or who lacks the
> ability to live in the general facility community and
> who may for good cause be restricted from communication
> with the general inmate population and who does not
> voluntarily accept admission in protective custody
> status. (7 N.Y.C.R.R. Section 330.2[b]).

In her disposition following the administrative segregation hearing, Commissioner's Hearing Officer Hallerdin relied on Correction Lieutenant Bartz' recommendation in finding that Appellant needed to be placed in administrative segregation.  However, her statement of evidence relied on indicates that the only reason he was placed in administrative segregation status rather than involuntary protective custody status was because he could be more easily protected in the confines of administrative segregation rather in involuntary protective custody.

It is clear from the Respondent's recommendation in 1996 that Appellant could be categorized as an administrative segregation status inmate or an involuntary protective custody status inmate.  The only reason that the Commissioner's Hearing Officer placed Appellant in administrative segregation rather than in involuntary protective custody was for the convenience of the Respondent.  The sum and substance of the hearing officer's decision on this point noted that one of the reasons he was being placed in administrative segregation was because the security staff at the Attica Correctional Facility could not guarantee his safety and security even if he was placed in involuntary protective custody (see Exhibit A).

Appellant has been in administrative segregation status at the Attica Correctional Facility since February 9, 1996. Since that time, he has been subject to the same rules and regulations as those disciplinary inmates who have completed 30 days of satisfactory adjustment in the Special Housing Unit (see 7 N.Y.C.R.R. Section 301.4[c]). Those post-admission adjustment regulations allow limited personal property and commissary purchases (see 7 N.Y.C.R.R. Part 303).

If Appellant was considered an involuntary protective custody inmate rather than an administrative segregation inmate, he would still have been housed in the Special Housing Unit (see 7 N.Y.C.R.R. Section 301.5). In that unit he would be subject to the more rigorous and intensive supervision given to inmates in that unit who are separated from the general population (see 7 N.Y.C.R.R. Section 300.2[b]). As a resident in the Special Housing Unit in involuntary protective custody, Appellant would have been able to take advantage of the less severe privileges available to such inmates (see 7 N.Y.C.R.R. Section 330.4).

Respondent's regulations pertaining to protective custody status inmates and those pertaining to administrative segregation inmates are not mutually exclusive. An inmate such as Appellant can be considered to fall within both definitions. Respondent's claim that he is to be treated as only an administrative segregation status inmate and, therefore, not eligible for those privileges given to protective custody status inmates was an arbitrary and capricious act resulting in significantly more restrictive living conditions than were reasonably necessary and violated Appellant's rights to equal protection under

-7-

the law and due process.

Respondent can cite to no reasonable legitimate policy consideration for denying Appellant privileges he would be entitled to as an involuntary or voluntary protective custody inmate. Their decision to deny those privileges simply because they determined that he was to be considered an administrative segregation inmate rather than a protective custody inmate, denied him equal treatment under the law and serves no legitimate penalogical interest (see Matter of Doe v. Coughlin, 71 N Y 2d 48; McGinnis v. Royster, 410 U S 263).

Respondent's placement of Appellant in administrative segregation status results in him being subject to the rights and privileges given to disciplinary inmates who are also housed in the Special Housing Unit. Appellant violated no disciplinary rules which would require him to be placed in the Special Housing Unit and subject to such restrictive conditions. The Respondent's decision to impose such conditions that are imposed on similarly situated disciplinary inmates denies Appellant's his right to due process. It is clear from a review of the record that the Respondent could have considered Appellant an involuntary protective custody status inmate which would not have denied him many of the privileges available to the inmates general population. The Respondent's administrative decision, which stated that Appellant is not entitled to less severe privileges available to other inmates in the Special Housing Unit simply because he is being considered an administrative segregation status inmate and not an involuntary protective custody status inmate, even though he could be considered as either one, was an arbitrary

-8-

decision which, under the circumstances of this case, shocks one's sense of fairness and cannot be sanctioned.


### Cruel and Unusual Punishment

As a New York State citizen, Appellant cannot be subject to cruel and unusual punishment (see U.S. Constitution Amendment 8; New York Constitution Article 1, Section 5).

Appellant has been subject to the restrictive disciplinary conditions of administrative segregation at the Attica Correctional Facility since February, 1996. While the Respondent does have discretion in preserving the security of the facility and placing inmates in administrative segregation, that placement cannot be for an indefinite period of time (see Hewitt v. Helms, 459 U S 460). In this case, it was error on the lower court's part to not conduct a fact-finding hearing on this issue in order to determine whether in fact the Respondent is inflicting cruel and unusual punishment by continuing Appellant's administrative segregation status.

In addition, the Respondent's regulations which impose on Appellant the same severely restrictive privileges as those inmates serving disciplinary sanctions when he has received no disciplinary infractions to justify such punitive treatment, inflicts upon him cruel and unusual punishment with no legitimate penalogical interest served. As Appellant was as much an involuntary protective custody status inmate as an administrative segregation inmate, he should not have been denied those privileges

-9-

available to involuntary protective custody status inmates. For example, there is no legitimate basis for denying Appellant the privilege of purchasing art supplies, which he was denied, when such a privilege is allowed to inmates in the Special Housing Unit under involuntary protective custody status.

On February 9, 2000, Appellant will have served approximately four years in administrative segregation in Attica Correctional Facility's Special Housing Unit. He will have been subject to the same disciplinary restrictions that inmates in the Special Housing Unit were subject to following Superintendent's hearings for serious disciplinary infractions. Appellant cannot change the nature of his instant offense nor change the attitude and behavior of inmates in general population. However, Appellant should be provided with the same privileges non-disciplinary inmates who must be separated from the general population are provided. To deny Appellant such humane treatment is to inflict cruel and unusual punishment (see McClary v. Coombe, ___ F. Supp ___, [Western District of New York, decided April 30, 1998, Docket No. 1:90-CV-00501]).

By this action, Appellant does not seek special treatment. Appellant has accepted his punishment from the sentencing court. He only asks that this Court reverse the lower court and find that while serving that sentence his constitutional rights have been violated. He would ask that this Court consider the words of Judge Wachtler in his dissent in Matter of Curle v. Ward, 46 N Y 2d 1049, at 1055, where he stated the following:

"We must always be alert that society's rights and

-10-

obligation to punish those convicted of criminal offenses not be extended to strip them bare of all constitutional freedoms. During a criminal's imprisonment, the State must stand vigil as guardian of those retained rights for the prisoner himself is incapable of doing so.".

July 15, 1998

Hon. Mark H. Dadd
Wyoming County Court
143 N. Main Street
Warsaw, New York 14569

      Re:  <u>Matter of Joel Rifkin v. Goord</u>
           Wyoming County Index No. 18,480

Dear Judge Dadd:

Enclosed is a copy of Commissioner's Hearing Officer Hallerdin's March 8, 1996 decision following Petitioner's administrative segregation hearing conducted after the filing of Correction Lt. Bartz's recommendation for such status. Lt. Bartz's recommendation was attached to Petitioner's above-referenced petition as Exhibit "A". At the time that the petition was prepared, I did not have a copy of the hearing officer's decision on that recommendation.

It is our position that the statement of evidence relied on and the reasons for the determination of the hearing officer are extremely pertinent to the issue raised in the instant petition. We would ask that this court consider this document in addition to those documents previously attached to the above-referenced petition.

For the assistance of the court and Respondent's counsel, attached to this letter in addition to the hearing officer's determination form is my interpretation of the words written by Hearing Officer Hallerdin on the form. Since many of the words may be illegible, I am providing the court with my interpretation. Obviously, if there is any discrepancy with any of those words set forth in my version of the form, such can be noted by Respondent's counsel.

"A"

Hon. Mark H. Dadd                                    Page Two (2)
July 15, 1998


Thank you for your attention to this matter.

                              Sincerely,



                              Jerry M. Ader
                              Staff Attorney
JMA/ls
Enc.

xc:  Joel Rifkin, #95-A-6514 (w/enc)
     Aida P. Reyes, Asst. AG (w/enc)

02/12/96    STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES    PAGE    1
            AUMINISTRATIVE SEGREGATION        HEARING DETERMINATION

            ATTICA GEN                                    TAPE NUMBER _____

DIN    9A6514 NAME: RIFKIN, JOEL                          LOCATION: RB-CS-006

RECOMMENDATION DATE & TIME:  02/09/96    01:50 PM

DELIVERY DATE & TIME:    02/12/96    12:39 PM    BY:  CO  G. WAWRZYNIEC

HEARING DATE & TIME:    2/21/96  3/8 PM    BY:  C/00  G. Hallerd

HEARING END DATE & TIME:    3/08/96  2.26 P.M.

CHARGE
NUMBER    DESCRIPTION OF CHARGES        REPORTED BY        DISPOSITION

999.99    ADMINISTRATIVE SEGREGATION        LT  G. BARTZ 96        Agree
                                                                    Yes

1. STATEMENT OF EVIDENCE RELIED UPON: *The recommendation by Lieutenant G Bartz that you be placed in Admin Seg because your introduction into general population would be disruptive & counter to the integrity of the security necessary in the facility and to your safety & well being. Due to the nature that your crimes received high notoriety, you have been attacked by inmates and your ID cards has been taken as souvenirs. The testimony by Dr. O'connell and Lieutenant's inpatient conduct, in that your medical concerns can be addressed. Lieutenant Klein's petition's testimony that IPC or PC would came you to be a 40 man company & remote with them & that Admin Seg would be far less exposed to other inmates. Admin Seg is determined appropriate for you. The confidential testimony into your mental health too has been considered.*

REASON FOR DETERMINATION: *as well as the testimony of Lieut Bartz Due to the notoriety of your conviction It would be disruptive & non-conducive to facility security to place you in contact with other inmates at this time. It would also be injurious to your safety & well-being. However this Admin Segregation will be reviewed periodically according to the directives.*

HAVE RECEIVED A COPY OF THIS DETERMINATION DATED: 3/08/96

_____ C/00        _____        3/8/96  2.26 P.M.
   HEARING OFFICER                    INMATE SIGNATURE            DATE AND TIME RECEIVED
     SIGNATURE

ACF 10

NOTICE TO INMATE:

YOU ARE HEREBY NOTIFIED THAT YOU MAY COMMUNICATE IN WRITING WITH THE
COMMISSIONER CONCERNING THIS MATTER WITHIN 30 DAYS OF YOUR RECEIPT OF THIS
DETERMINATION.

INTERPRETATION

1.    <u>Statement of Evidence Relied Upon</u>: The recommendation by Lieutenant G Bartz that you be placed in Admin. Seg. because your introduction into general populat6ion would be disruptive & counter to the integrity of the security necessary in the facility and to your safety & well-being.  Your testimony that your crimes received high notoriety, you have been attacked by inmates and your ID cards has been taken as "souveniers".  The testimony by Dr. O'Connel and Lieutenant Kirkpatrick indicating that your medical concerns can be addressed.  Lieutenant Kirkpatrick's testimony that IPC or PC would cause you to be in a 40 man company & recreat with them & that Admin. Seg. would be far less exposure to other inmates.  Admin. Seg. is determined as appropriate for you.  The confidential testimony regarding your mental health have (sic) been taken into consideration as well as the testimony of Rabbi Baron.

2.    <u>Reason for Determination</u>:  Due to the notoriety of your conviction & the facts you indicated as to being attacked by inmates, it would be disruptive & non-conducive to facility security to place you in contact with other inmates at this time.  It would also be injurious to your safety & well-being.  However this Admin. Segregation will be reviewed periodically according to the directives.

# EXHIBIT B

Docket No. CA97-3473

STATE OF NEW YORK          :     SUPREME COURT
APPELLATE DIVISION         :     FOURTH JUDICIAL DEPARTMENT

─────────────────────────────────────────────────

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514

        Appellant,

   v.

GLENN GOORD, Commissioner,
Department of Correctional Services,

     Respondent.

─────────────────────────────────────────────────

RECORD ON APPEAL FOR APPELLANT
Wyoming County Index No. 18,480

─────────────────────────────────────────────────

Norman P. Effman, Esq.
Executive Director
Attorney for Appellant
WYOMING COUNTY-ATTICA
  LEGAL AID BUREAU
14 Main Street
Attica, New York 14011
(716) 591-1600

JERRY M. ADER, Of Counsel

# TABLE OF CONTENTS

Page

STATEMENT PURSUANT TO CPLR 5531 . . . . . . . . . .    ii

NOTICE OF APPEAL  . . . . . . . . . . . . . . . . .   R 1-2

ORDER OF ASSIGNMENT . . . . . . . . . . . . . . . .   R 3-4

ORDER TO SHOW CAUSE AND PETITION  . . . . . . . . .   R 5-28

RESPONDENT'S ANSWER WITH ATTACHMENTS  . . . . . . .   R 29-51

MEMORANDUM AND ORDER  . . . . . . . . . . . . . . .   R 52-61

MOTION FOR PERMISSION TO APPEAL AS A POOR PERSON  .   R 62-65

RENEWED MOTION FOR PERMISSION TO APPEAL AS
A POOR PERSON . . . . . . . . . . . . . . . . . . .   R 66-83

STIPULATION TO THE RECORD . . . . . . . . . . . . .   R 84

STATEMENT PURSUANT TO RULE 5531 OF THE CPLR

1.   The Index Number of the case in the Court below is
18,480.

2.   The full names of the original parties are Joel Rifkin,
#95-A-6514, Petitioner-Appellant, and Glenn S. Goord,
Commissioner, Department of Correctional Services,
Respondent.

3.   This action was commenced by way of an Order to Show
Cause granted on June 1, 1998 by the Wyoming County Supreme
Court (Mark H. Dadd, T.A.J.S.C.) and made returnable on July
29, 1998.

4.   This action concerns an appeal from a Memorandum and
Judgment of the Wyoming County Supreme Court (Dadd,
T.A.J.S.C.) entered on October 20, 1998 which denied
Appellant's Article 78 petition.

5.   This action is brought upon the original record.

STATE OF NEW YORK
SUPREME COURT        :        COUNTY OF WYOMING

---

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514 (ATTICA),

                 Petitioner,

                 NOTICE OF APPEAL

     -v-

            Wyo. Co. Index No.  18,480

GLENN S. GOORD, Acting Commissioner,
Department of Correctional Services,

               Respondent.

---

       PLEASE TAKE NOTICE that the above-named
Petitioner hereby appeals to the Appellate Division,
Fourth Judicial Department from a Memorandum and
Judgment of the Wyoming County Supreme Court entered on
the 23rd day of October, 1998 denying Petitioner's
petition for Article 78 relief, and from each and every
part of this Memorandum and Judgment.

DATED:  December 3, 1998     NORMAN P. EFFMAN, ESQ.
       Attica, New York      Attorney for Petitioner
                           Executive Director
                           WYOMING COUNTY-ATTICA
TO:  DENNIS C. VACCO         LEGAL AID BUREAU
     Attorney General of the  14 Main Street
       State of New York     Attica, New York 14011
     Department of Law       (716) 591-1600
     107 Delaware Avenue
     Buffalo, New York  14202

     JOEL RIFKIN, #95-A-6514
     Attica Correctional Facility

R-1

STATE OF NEW YORK
COUNTY OF WYOMING        :        SUPREME COURT

---

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

                    Petitioner,

        -V-                    AFFIDAVIT OF SERVICE
                        Wyoming County Index No.  18,480

GLENN S. GOORD, Acting Commissioner,
Department of Correctional Services,

                    Respondent.

---

STATE OF NEW YORK)
COUNTY OF WYOMING)  ss:
VILLAGE OF ATTICA)

        After first being sworn, CHERYL KRULL says

that she is a resident of the State of New York over the

age of eighteen years and that she is not a party to

this action and that she served the Petitioner's Notice

of Appeal upon DENNIS C. VACCO, Attorney General of the

State of New York by duly mailing on December 3, 1998, a

true copy to his office at 107 Delaware Avenue, Buffalo,

New York  14202.

                    _Cheryl Krull_

Sworn to before me this
3rd day of December, 1998.

_____
    Notary Public

                ROSEMARY P. EPPMAN,
            Notary Public, State of New York
            Qualified in Wyoming County
            My Commission Expires Nov. 30, 2000

                                        R-2

## SUPREME COURT OF THE STATE OF NEW YORK
# Appellate Division, Fourth Judicial Department

DOCKET NO. CA97-3473

PRESENT:  GREEN, J. P., WISNER, PIGOTT, JR., HURLBUTT AND SCUDDER, JJ.

---

MATTER OF JOEL RIFKIN, PETITIONER-APPELLANT,

     v

OCT 2 9 1999

GLENN S. GOORD, ACTING COMMISSIONER, DEPARTMENT OF
CORRECTIONAL SERVICES, RESPONDENT-RESPONDENT.

---

Appellant having renewed the motion for permission to proceed as a poor person on the appeal taken herein from a judgment of the Supreme Court entered in the Office of the Clerk of the County of Wyoming on October 23, 1998,

Now, upon reading and filing the affidavit of Norman P. Effman sworn to October 1, 1999, the affidavit of Joel Rifkin sworn to June 19, 1998, the notice of motion with proof of service thereof, and due deliberation having been had thereon,

It is hereby ORDERED that the motion be, and the same hereby is, granted, on condition that the appeal is perfected on or before December 17, 1999, and, in the event of failure to so perfect, the appeal is hereby dismissed without further order.

Entered:  October 27, 1999            CARL M. DARNALL, Clerk

R-3

Form 95. DAILY RECORD CORP.

# Supreme Court
## APPELLATE DIVISION,
### Fourth Judicial Department,
Clerk's Office, Rochester, N.Y.

*I, CARL M. DARNALL, Clerk of the Appellate Division of the Supreme Court in the Fourth Judicial Department, do hereby certify that this is a true copy of the original order, now on file in this office.*



IN WITNESS WHEREOF, *I have hereunto set my hand and affixed the seal of said Court at the City of Rochester, New York, this* OCT 2 7 1999

*Carl M. Darnall*

...........................................

*Clerk.*

R-4

FILED

STATE OF NEW YORK
SUPREME COURT            :            COUNTY OF WYOMING

98 JUN -2 PM12:30

In the Matter of the Application of          WYOMING COUNTY CLERK
JOEL RIFKIN, #95-A-6514,                              WARSAW, N.Y.

          Petitioner,
                              ORDER TO SHOW CAUSE

    -v-
                              Index No.   18480

GLENN GOORD, Acting Commissioner,
Department of Correctional Services,
          Respondent.

FOR RELIEF PURSUANT TO ARTICLE 78 CPLR

_____

          Upon the affidavit of Jerry M. Ader, Esq., of
counsel to Norman P. Effman, Esq., sworn to on the 22 day
of May, 1998, and the verified petition, it is hereby,
          ORDERED that Petitioner is granted poor person
status, that the filing fees be waived and Wyoming County-
Attica Legal Aid Bureau is assigned to represent Petitioner,
and it is further
          ORDERED that the above named Respondent show cause
at a Special Term of the Court on ____7/29/98____, at
the Wyoming Correctional Facility Annex, Attica, New York,
at 9:30 a.m. or as soon thereafter as counsel can be heard,
why judgment should not be made granting the relief demanded
in the petition and why such other and further relief as may
seem just and proper to the Court should not be allowed; and
it is further,
          ORDERED that service of this Order and the papers
upon which it was granted, upon Respondent Goord at the
State Office Building Campus, Albany, New York by regular
mail and upon Respondent's counsel effected by service upon
the Assistant Attorney General at the office of the Attorney
General in Buffalo, New York personally, or by regular mail
or "fax" on the 12th day of JUNE , 1998 be deemed good and
sufficient service.  Service by mail shall be considered
complete upon mailing.

                              S/ MARK H. DADD
                              _____
                              Acting Supreme Court Justice

DATED:   6/1/98
     Warsaw, New York

R-5

STATE OF NEW YORK
SUPREME COURT                :           COUNTY OF WYOMING

98 JUN -2 PM 12: 30

WYOMING COUNTY CLERK.
WARSAW, N.Y.

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

            Petitioner,
                                AFFIDAVIT
    -v-

GLENN GOORD, Acting Commissioner,
Department of Correctional Services,

            Respondent.

STATE OF NEW YORK)
COUNTY OF WYOMING)   ss:
VILLAGE OF ATTICA)

            JERRY M. ADER, being duly sworn, deposes and says:

            1.  I am the attorney for the Petitioner in the
above entitled action, and am fully familiar with all the
facts and circumstances herein.  I am of the opinion that
the petition states a cause of action.

            2.  Petitioner is an inmate at the Attica
Correctional Facility in the State of New York.

            3.  The instant petition pursuant to Article 78
challenging the legality and constitutionality of
Petitioner's continued status as an Administrative
Segregation inmate.

            4.  Petitioner seeks to proceed by Order To Show
Cause so as to authorize him to effect service upon the
Respondent and Respondent's counsel by regular mail or
"fax".  This will result in substantial savings in travel

R-6

costs and expenses related to service of these papers.

5.  No prior application has been made for the relief requested herein.

6.  As an attorney associated with the Wyoming County-Attica Legal Aid Bureau, I certify that based upon the information received by our office from the Petitioner, he is unable to pay the costs, fees, and expenses necessary to prosecute or to maintain this proceeding and that he meets the poor person standards.

7.  No other person is beneficially interested in the relief which Petitioner seeks.

WHEREFORE, it is respectfully requested that this Court issue an Order to direct Respondent to show cause on _____7/29/9/_____ as to why an Order should not be made pursuant to Article 78 of the CPLR granting the relief requested.

JERRY X. ADER
Staff Attorney

Sworn to before me this
22nd day of May, 1998.

NOTARY PUBLIC
SUSAN K. JONES
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Sept. 30, 1998

R-7

FILED

STATE OF NEW YORK
SUPREME COURT                    :        COUNTY OF WYOMING

98 JUN -2 PM 12: 30

WYOMING COUNTY CLERK
WARSAW, N.Y.

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

      Petitioner,

                          PETITION FOR A JUDGMENT
                          PURSUANT TO ARTICLE 78
   -against-               OF THE CPLR

GLENN GOORD, Acting Commissioner,
Department of Correctional Services,

      Respondent.

TO THE SUPREME COURT
STATE OF NEW YORK
COUNTY OF WYOMING

        The Petition of Jerry M. Ader, Esq., of counsel to

Norman P. Effman, Esq., on behalf of Joel Rifkin, for relief

pursuant to Article 78 of the CPLR respectfully states that:

### NATURE OF THE ACTION

        1.  This is a special proceeding brought to

challenge the legality and constitutionality of Petitioner's

continued status as an Administrative Segregation inmate.

### VENUE

        2.  Pursuant to CPLR Section 7804(b), Section

506(b), and Section 509, venue of this proceeding is

properly laid in Wyoming County.

R-8

### PARTIES

3.  Petitioner is an inmate at the Attica Correctional Facility.

4.  Respondent, GLENN GOORD is the Acting Commissioner of the Department of Correctional Services and, as such, is responsible for the overall management and supervision of those institutions within the Department of Correctional Services.

### FACTUAL ALLEGATIONS

The following are alleged upon information and belief:

5.  The New York Constitution and the United States Constitution provide that citizens must be accorded certain enumerated rights, including the right to be free from the infliction of cruel and unusual punishment (see U.S. Constitution, Amendment VIII; New York State Constitution, Article I, Section 5). These constitutions also provide every citizen with the right of due process to insure that substantive rights are protected (see U.S. Constitution, Amendment XIV, Section 1). The due process clause of the constitution requires that inmates must be accorded certain procedural safeguards before they can be disciplined for violations of inmate rules.

6.  In the State of New York, the procedures for placing inmates in the Special Housing Unit and the

R-9

conditions under which they will live in that unit are found in 7 N.Y.C.R.R. Chapter VI.

7. On February 9, 1996, Correction Lieutenant Bartz filed a recommendation report that Petitioner be placed in Administrative Segregation (see Exhibit "A").

8. The report provided the following reason for this recommendation:

> "Due to the notoriety, publicity and serious nature associated with inmate Rifkin's criminal convictions, the introduction of Rifkin to general population would be disruptive and would not be conducive to maintaining the integrity of security which is necessary at this facility. The safety and well being of Rifkin is also a strong consideration in this recommendation."
> (Exhibit "A").

9. Following a Superintendent's hearing held on March 8, 1996, Petitioner was placed in Administrative Segregation in the Attica Correctional Facility's Special Housing Unit. The reasons given for the placement were the exact same reasons stated in the recommendation report.

10. On December 3, 1997, Petitioner filed a grievance at the Attica Correctional Facility (see Exhibit "B").

11. Petitioner's grievance raised three issues. First, that the Respondent's Directive 4933, Section C(3) (see, 7 N.Y.C.R.R. Section 301.4[c]) is unconstitutional in that it violates the due process and equal protection

R - 10

clauses of the United States and New York State
Constitutions.  Second, that Respondent's definitions for
determining when an inmate requires protective custody and
when an inmate requires administrative segregation are
unconstitutionally vague in violation of the due process and
equal protection clauses of the State and U.S. Constitutions
(see, 7 N.Y.C.R.R. Section 330.2 and Section 301.4[b]).
Third, that Respondent's regulation which provides more
privileges and rights to protective custody inmates than
those given to administrative segregation inmates violates
the equal protection clause of the State and U.S.
Constitutions (see 7 N.Y.C.R.R. Section 301.5 and Section
301.4[c]).

    12.  An investigation report was prepared on
December 10, 1997 (see Exhibit "C").

    13.  On December 19, 1997, Acting Superintendent
Donnelly denied Petitioner grievance.  He issued the
following decision:

> "I concur with the provision of Directive
> 4933 C 3.  You have been placed in
> Administrative Segregation per the terms
> of Directive 4933 C 2.
>
> Although you believe you should be determined
> to be in protective custody, the Facility
> has determined through reference to the
> above cited directive that you reside in
> Administrative Segregation Status.  Due to
> your challenge to these directives, this
> grievance is being referred to CORC for
> review."

(see Exhibit "D")

R-11

14.   Following an appeal by Petitioner, the
Central Office Review Committee affirmed the
Superintendent's decision and denied Petitioner's grievance
on January 21, 1998 (see Exhibit "E").

LEGAL CLAIMS

15.   Paragraphs 5 through 14 are hereby repeated
and re-alleged as though fully set forth in this section.

16.   Respondent's finding that Petitioner needed
to be segregated from those inmates in general population
was phrased in language which defined a protective
custody inmate and language which defined an
administrative segregation inmate.

17.   Respondent's decision to consider Petitioner
an administrative segregation inmate with be severe
restricted privileges incumbent upon such inmates pursuant
to 7 N.Y.C.R.R. Section 301.4© was arbitrary and capricious
and denies him equal treatment under the law.

18.   Respondent's reasons for recommending his
segregation claim that he was a likely victim of other
inmates' attacks, the finding that would have sustained a
protective custody determination pursuant to
7 N.Y.C.R.R. Section 330.2 and Section 330.3.

19.   Respondent can cite to no reasonable
legitimate policy consideration for denying Petitioner

privileges provided to protective custody inmates simply because he has been placed in administrative segregation status.

20. Petitioner has not violated any of Respondent's rules which would have required his placement in the Special Housing Unit for disciplinary purposes and should not be subject to the same rules and regulations as those **disciplinary** inmates who have completed 30 days of satisfactory adjustment.

21. Respondent's purpose for finding that certain inmates require placement in protective custody to insure both the safety and security of both the inmates and the facility (see 7 N.Y.C.R.R. Section 330.1).

22. Respondent's stated purpose for placing inmates in administrative segregation status is because their presence in general population would pose a threat to the safety and security of the facility (see 7 N.Y.C.R.R. Section 301.4[b]).

23. Since Respondent's regulations pertain to protective custody status inmates and administrative segregation inmates are not mutually exclusive, their decision in this case to deny Petitioner's grievance because they claim that he is an administrative segregation status inmate and not a protective custody status inmate is arbitrary and capricious and resulted in significantly more

restrictive living conditions than reasonably necessary.

WHEREFORE, Petitioner respectfully requests that the Court declare 7 N.Y.C.R.R. Section 301.4(b) unconstitutionally vague and that it declare 7 N.Y.C.R.R. Section 301.4(c) an infliction of cruel and unusual punishment in violation of the State and Federal Constitutions and declare that Respondent's treatment of Petitioner as compared to other inmates placed in protective custody in the Special Housing Unit is unequal under the law and any other and further relief as to this Court deems just and proper.

> JERRY M. ADER
> Staff Attorney
> WYOMING COUNTY-ATTICA
>  LEGAL AID BUREAU
> 14 Main Street
> Attica, New York 14011

R-14

V E R I F I C A T I O N

STATE OF NEW YORK)
COUNTY OF WYOMING)   ss:
VILLAGE OF ATTICA)

        JERRY M. ADER, being duly sworn deposes and says that:

        I am an attorney duly admitted to practice law in the courts of the State of New York and, as such, I am of counsel to Norman P. Effman the Executive Director, Wyoming County-Attica Legal Aid Bureau, and that I have read the foregoing petition and know the contents thereof to be true, except to the matters herein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

                                     JERRY M. ADER

Sworn to before me this
2nd day of May , 1998.

                                    
      NOTARY PUBLIC

SUSAN K. JONES
Notary Public, State of New York
Qualified in ` `t County
My Commission Expires Sept. 30, 1998

R-15

FORM 2168 (REV. 6/93)
(XEROX LOCALLY AS NEEDED)

STATE OF NEW YORK · DEPARTMENT OF CORRECTIONAL SERVICES

_ATTICA_ CORRECTIONAL FACILITY

Check One   ☑ - ADMINISTRATIVE SEGREGATION RECOMMENDATION
            ☐ - INVOLUNTARY PROTECTIVE CUSTODY RECOMMENDATION

1. INMATE NAME _RIFKIN, JOEL_ DIN. _95A6514_ CELL _B5-3_

2. REASON FOR THIS RECOMMENDATION:

_Due to the notoriety, publicity and serious nature associated with inmate Rifkin's criminal convictions, the introduction of Rifkin to General Population would be disruptive and would not be conducive to maintaining the integrity of security which is necessary at this facility. The safety and well being of Rifkin is also a strong consideration in this recommendation._

_2/9/96_  _1:50 PM_   _G. BARTZ_        _G. Bartz_      _CORRECTION LIEUTENANT_
Date / Time       Name of Person        Signature            Title
                  Making Recommendation

i. IS INMATE CONFINED PENDING A DETERMINATION ON THIS RECOMMENDATION?  ☑ YES  ☐ NO

. IF YES,

.. a. HOUSING UNIT OF PRESENT CONFINEMENT _RECEPTION BUILDING_ CELL _B5-3_

   a. AUTHORIZED BY: _E. R. DONNELLY, D.S.S._

_Served_   FEB 12 1996

OTICE TO INMATE:  A hearing will be conducted within 14 days of this recommendation in accordance with the provisions Part 254 of Chapter V. You will be entitled to call witnesses on your own behalf provided that doing so does not jeopardize stitutional safety or correctional goals.

restricted pending a hearing on this recommendation you may write to the Deputy Superintendent for Security or his/her signee prior to the hearing to make a statement on the need for continued confinement.

TTRIBUTION:   ORIGINAL      -INMATE
              COPY         -DISCIPLINARY OFFICE

## INMATE GRIEVANCE COMPLAINT

Grievance No.

**86381-97**

_____ Attica _____ CORRECTIONAL FACILITY

Date  12-3-97

Name  Joel Rifkin                     Dept.No.  95A6514   Housing Unit  SHU

Program _____  AM _____  PM

*(Please Print or Type - This form must be filed within 14 days of Grievance Incident)*

Description of Problem: (Please make as brief as possible)  This Grievance directly is lodged against Directive #4933 and 4948 This Grievance is three part  See Attached 1-6

_____

_____

_____

_____

Grievant
Signature  _____

Grievance Clerk  _____  Date:  **DEC 09 1997**

Advisor Requested    ☐ YES   ☑ NO   Who: _____

Action requested by inmate:  See Attached Page #7

_____

_____

This Grievance has been informally resolved as follows:

_____

_____

_____

_____

This Informal Resolution is accepted:
To be completed only if resolved prior to hearing)

Grievant
Signature  _____

Date: _____

unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

R-19 "B"

From: Joel Rifkin 95A6514

RE: Grievance of DOCS Directive

Date: 12-03-97

⑧

36381-97

DEC 09 1997

Mr. Stabel Sir:

On your last visit to the SHU we spoke of Mr. Adersters request to me that I file additional Grievances with regard to my current lawsuit 78 in Wyoming Court

At that Time you suggested that I grieve the DOCS DIRECTIVES directly. Enclosed you will find a Three part grievance with a Non-judicial solution attached.

Please process this Grievance and forward it to the CORC for me.

I have additional Copies of these pages if you need them. Also please via in-house mail send me the assigned grievance Number

Thank You For Your Time

Joel Rifkin 95A6514 C3-6

PS My best wishes for the coming holidays for you and your family

R-18

86581-97



PART I :   As To Docs Directive 4933 Section 2 C,
    Subsection 3

DEC 09 1997

When housed in SHU Administrative Segregation inmates
will be Subject to the same rules and regulations as
those DISCIPLINARY inmates...

This subsection is unconstitutional in that it violates the
14th Amendment of the US constitution as it relates to both
its Due Process clause and Equal Protection Clause in that;
an inmate who has NOT VIOLATED any Tier 3 rules is
made subject to live under conditions of DISCIPLINE
and thus is DEPRIVED of what would be his normal inmate
liberties, cell property, and commissary priviledges.

R-14

36381-97

(0)

DEC 09 1997

PART II: The DOC deffinition of what exactly constitute an IPC inmate versus Administrative Segregation inmate is unconstitutionaly vague in that they are so losly constructed that they are interchangable

DOCS 4948 states;

An inmate who is a potential victim or a witness likely to be intimidated or who lacks the ability to live in the general facility community and who may, for good cause, be restricted from communication with the general inmate population, ...

DOCS 4933 SC 552

Administrative Segregation admission results from a determination by the facility that the inmates' presence in general population would pose a threat to the safety and security of the facility.

When placed in juxtaposition these two definitions are semantically the same in that an inmate who is a potential victim, or who lacks the ability of live in the general facility community IS ALSO (☞) would pose a threat to the safety and security of the facility

R-20

36381-97

DEC 09 1997

Two definitions my placement in Administrative Segregation based on the recommendation of Lieutenant Bartz on DOCS form 2163 Admin. Seg./IPC Recommendation form reads as follows;

Due to the Noteriety, publicity and serious nature associated with inmate Rifkin's Criminal convictions, the introduction of Rifkin to General Population would be disruptive and would not be conducive to maintaining the integrity of security which is necessary at this facility. The safety and well being of Rifkin is also a strong consideration in this recommendation.

The first sentence of the Recommendation conforms to Directive #4933.

The second sentence conforms to Directive #4948.

THUSLY: my status could be either IPC or Ad. Seg. and thus my housing status could be either or; thus my being housed in Administrative Segregation as opposed to the less restrictive IPC is an abuse of discretion and an abuse of power and a violation of Civil Rights under the color of the law as to my protected liberty intrests under both NYS Laws and the constitution of the US., in that I could be IPC and housed in the SMU and still R·21



36381-97

DEC 09 1997

The Security and safety needs of Attica CF. ie
4½ inch drawing pencils, quality (acid-free) drawing paper,
origami folding paper, religious foods and religious items...

86381-97

DEC 09 1997

PART III: As to DOCS Directive 4933 Section D.

An inmate in Protective Custody Status may be housed in a SHU. Inmates in this status. shall be subject to the conditions of confinement as set forth in Section IV of Directive 4948, "Protective Custody Status.

is Negated in part but not in its entirety by DOCS Directive 4933 Section IV Subsection N.

Personal Property. Inmates will be issued their personal property when assigned to Protective Custody Status, subject to safety and security considerations.

It is also further Negated in part by DOCS Directive 4948 Section VI (E);

LOCAL RULES AND REGULATIONS. Each facility housing inmates in Protective Custody Status shall promulgate rules and regulation for care and custody and submit them to the Deputy Commissioner for Facility Operations for review and approval

THUSLY each facility has the ability to interpret DOCS Directive 4948 with some discretion and flexibility and subject to approval does not have to Adhere strictly to # 4948 and # 4933 SO §§ 3 by classifying SHU inmate workers as I.P.C. is such the Administration of Attica CF is not bound by the exact wording of # 4933 SO

86381-97 (E)

DEC 09 1997

loophole when assigning and designating SHU inmate workers. These inmates although housed in the SHU are allowed to posess personal in cell property along with receiving a standard commissory purchase and are allowed additional non work related out of cell time in the off Tier areas of the SHU.

THUSLY Does Directive 4933§c §§ 3 as written does not apply to ALL SHU inmates but only to the majority of these inmates and at the discretion or whim of the facility, and as such TWO identically housed sets of inmates exist that are subject to different sets of rules and regulations this is a direct violation of the equal protection clause of the 14th Amendment to the US constitution in that the Treatment of these two sets or classes of inmates is blatently unequal.

R-24

36381-97   8

NON - JUDICIAL SOLUTION                    DEC 00 1997

The DOCS could create a small carefully definned unit within the confines of the SHU in where NON-DISCIPLINARY Administrative Segregation inmates and SHU inmate workers can be housed in such a way that their unit is seperate from and has no contact with DISCIPLINARY inmates.

The inmates on this "Short Term" or "Admin. Seg. Term" would have limited or restricted property and commissary privileges granted to them.

HOWEVER: should such an inmate receive a DISCIPLINARY write up, he should be removed from that unit to serve his "box time" or loose a commissary buy or other privilege.

Under this system those inmates who have done nothing wrong would not be made subject to discipline, deprivation punishment or punitive treatment which is undeserved.

R-25



# INMATE GRIEVANCE RESOLUTION COMMITTEE
## INVESTIGATION REPORT

NAME _Rifkin, J_ DIN # _95A6514_ LOC _C5-6_ GRIEVANCE # _36381_

PREPARED BY _D. Carle_ Date _12/10/97_

REFERENCES:

1. _D.R. 4933_                    4. _____

2. _____    5. _____

3. _____    6. _____

_D.R. 4933 II C-3 CLEARLY STATES:_

"_WHEN HOUSED IN SHU, ADMINISTRATIVE_
_SEGREGATION INMATES WILL BE SUBJECT_
_TO THE SAME RULES AND REGULATIONS_
_AS THOSE DISCIPLINARY INMATES WHO_
_HAVE COMPLETED 30 DAYS OF SATISFACTORY_
_ADJUSTMENT._"

PREVIOUS DECISIONS OR RULINGS_____

ADDITIONAL COMMENTS_____

_R-26_ "_C_"

| STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES | GRIEVANCE NO. A-36381-97 | DATE FILED 12/09/97 |
| | FACILITY ATTICA CORR. FACILITY | POLICY DESIGNATION _DEPARTMENTAL_ ~~INSTITUTIONAL~~ |
| INMATE GRIEVANCE PROGRAM | TITLE OF GRIEVANCE Challenge Directives | CLASS CODE 31 |
| SUPERINTENDENT | SUPERINTENDENT'S SIGNATURE | DATE 12/15/97 |
| GRIEVANT J. RIFKIN | DIN # 95-A-6514 | HOUSING UNIT CS/6 |

## GRIEVANCE DENIED:

I concur with the provisions of Directive 4933 C 3. You have been placed in Administrative Segregation per the terms of Directive 4933 C 2.

Although you believe you should be determined to be in protective custody, the Facility has determined through reference to the above cited directive that you reside in Administrative Segregation Status. Due to your challenge of these directives, this grievance is being referred to CORC for review.

CC:  J. Conway, DSS
     Lt. J. Bea
     Lt. R. Pikula

---

### APPEAL STATEMENT

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have four (4) working days from receipt of this notice to file your appeal. Please state why you are appealing this decision to C.O.R.C.

_____

_____

_____

R-27  "D"

GRIEVANT'S SIGNATURE                          DATE

| STATE OF NEW YORK | GRIEVANCE NO. A-36381-97 | DESIG./CODE 1/31 | DATE FILED 12/9/97 |
|---|---|---|---|
| DEPARTMENT OF CORRECTIONAL SERVICES | FACILITY Attica Corr. Fac. | | |
| INMATE GRIEVANCE PROGRAM | TITLE OF GRIEVANCE Challenge Directives | | |
| CENTRAL OFFICE REVIEW COMMITTEE | DIRECTOR'S SIGNATURE | DATE 1/21/98 | |

ACTION REQUESTED: "None specifically stated."

1/21/98

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED AS WITHOUT MERIT

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied as without merit.

CORC sustains the Superintendent, in part, i.e.:

Grievance denied.

I concur with the provisions of Directive 4933 C. 3. You have been placed in Administrative Segregation per the terms of Directive 4933 C.2.

Although you believe you should be determined to be in protective custody, the facility has determined through reference to the above cited Directive that you reside in Administrative Segregation status.

CORC asserts that the facility administration is in compliance with Department policy regarding Administrative Segregation.

/k

R-28

STATE OF NEW YORK
SUPREME COURT    :    COUNTY OF WYOMING

———————————————————————

SEP - 8

In the Matter of the Application of
JOEL RIFKIN, #95A6514,

               Petitioner,

   vs.                              **ANSWER**

GLENN S. GOORD, Commissioner,        **Index No. 18,480**
NYS Dept. of Correctional Services,

               Respondent.

———————————————————————

    Respondent, by his attorney, answers the petition as
follows:

    1.   Admits the allegations of paragraphs 1, 2, 3, 4, 6, 7,
8, 10, 12, 13 and 14.

    2.   Denies the allegations of paragraphs 11, 16, 17, 18,
19, 20 and 23.

    3.   Paragraphs 5, 21 and 22 of the petition constitute
legal argument and therefore require no response.

    4.   Admits paragraph 9 insofar as it alleges that
petitioner was placed in administrative segregation at Attica
Correctional Facility following a hearing held March 8, 1996, and
denies the remaining allegations of paragraph 9.

    5.   As to paragraph 15, respondent hereby repeats and
realleges his responses to paragraphs 5 through 14 of the

R-29

petition.

6.   Denies every allegation not admitted, denied or otherwise responded to above.

## RETURN

7.   Annexed hereto as Exhibits A and B are true copies of documents maintained by the New York State Department of Correctional Services.

## AS TO THE PETITION'S
## CLAIMS, RESPONDENT ALLEGES:

8.   There is no merit to the petition's claim that petitioner's placement in administrative segregation is in violation of his constitutional rights.

9.   First, petitioner's placement into administrative segregation, and his continued placement there, was effected pursuant to regulations established in 7 NYCRR 301.4.

10.   Furthermore, petitioner's placement into administrative segregation was completed in March, 1996; accordingly, any challenge to petitioner's placement therein is untimely pursuant to CPLR 217.

11.   Finally, an inmate's placement into protective custody status is a temporary measure designed to separate an inmate from enemies and place him into a smaller unit until such time when

2

R-30

the inmate can be transferred to another facility and returned to general population. See 7 NYCRR 330.3.

12. As it is unlikely at this time that petitioner can be placed into a smaller unit of inmates or general population at any facility without a disruption due to his offense and the notoriety thereof, his placement into administrative segregation is appropriate.

WHEREFORE, respondent respectfully requests that the petition be dismissed or denied.


Dated:      Buffalo, New York
            September 4, 1998

                                    DENNIS C. VACCO
                                    Attorney General of the State
                                        of New York
                                    Attorney for Respondent
                                    MICHAEL A. SIRAGUSA
                                    Assistant Attorney General
                                        of Counsel
                                    Statler Towers, 4th Floor
                                    107 Delaware Avenue
                                    Buffalo, NY 14202
                                    Telephone: (716) 853-8485

3

R-31

ATTICA
_____ CORRECTIONAL FACILITY

Check One    ☑ - ADMINISTRATIVE SEGREGATION RECOMMENDATION
☐ - INVOLUNTARY PROTECTIVE CUSTODY RECOMMENDATION

1. INMATE NAME RIFKIN, JOEL _____ DIN. 95A6514 CELL B5-3

2. REASON FOR THIS RECOMMENDATION:

DUE TO THE NOTORIETY, PUBLICITY AND SERIOUS NATURE ASSOCIATED WITH INMATE RIFKIN'S CRIMINAL CONVICTIONS, THE INTRODUCTION OF RIFKIN TO GENERAL POPULATION WOULD BE DISRUPTIVE AND WOULD NOT BE CONDUCIVE TO MAINTAINING THE INTEGRITY OF SECURITY WHICH IS NECESSARY AT THIS FACILITY. THE SAFETY AND WELL BEING OF RIFKIN IS ALSO A STRONG CONSIDERATION IN THIS RECOMMENDATION.

2/9/96  1:50 PM    G. BARTZ    G. Bartz    CORRECTION LIEUTENANT
Date / Time    Name of Person    Signature    Title
Making Recommendation

3. IS INMATE CONFINED PENDING A DETERMINATION ON THIS RECOMMENDATION? ☑ YES ☐ NO

4. IF YES,

a. HOUSING UNIT OF PRESENT CONFINEMENT    RECEPTION BUILDING    CELL B5-3

a. AUTHORIZED BY: E.R. DONNELLY, D.S.S.

NOTICE TO INMATE:   A hearing will be conducted within 14 days of this recommendation in accordance with the provisions of Part 254 of Chapter V. You will be entitled to call witnesses on your own behalf provided that doing so does not jeopardize institutional safety or correctional goals.

If restricted pending a hearing on this recommendation you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued confinement.

DISTRIBUTION:   ORIGINAL   -INMATE
COPY   -DISCIPLINARY OFFICE

R-32

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## INMATE GRIEVANCE COMPLAINT

Grievance No. **86**381 - 9**7**

_Attica_ _CORRECTIONAL FACILITY

Name _Joel R. Fulin_                    Date _12-3-97_

Dept.No. _95A6514_   Housing Unit _SHU_

Program _____   AM _____   PM _____

*(Please Print or Type - This form must be filed within 14 days of Grievance Incident)*

Description of Problem: (Please make as brief as possible) _This Grievance directly is lodged against Directive # 4933 and 4948 This Grievance is three parts See Attached 1-6_

Grievant
Signature _____

Grievance Clerk _____     Date: **DEC 09 1997**

Advisor Requested  ☐ YES  ☒ NO   Who: _____

Action requested by inmate: _See Attached Page # 7_

This Grievance has been informally resolved as follows:

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant
Signature _____     Date: _____

f unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

R-33
a

Response of IGRC:  12-12-97    DEADLOCK



RECOM#1: Grievance denied. Grievant is currently in Admin. Seg. status and subject to Dir. 4933 III c3 which states: "Ad-min. Seg. inmates will be subject to the same rules and regula-tions as those disciplinary inmates while housed in S.H.U. *I. A.*

RECOM#2: Grievant raises valid issues, and it's reccommended that he pursue this issue with the court. *I. A.*

Date Returned to Inmate _____    IGRC Members  #2 _Swiggett_

Chairperson _____Olar Regan_____    *1  SCC J. Roach_

                                            #1  _____

                                            #2  _____

*Return within 4 days and check appropriate boxes.*

☐ I disagree with IGRC response.

☐ I agree with the IGRC response.

☐ I have reviewed deadlocked responses.  Pass-Thru to Superintendent

☐ I wish to appeal to the Superintendent.

Signed _____    _____
                    Grievant                      Date

_____    _____
         Grievance Clerk's Receipt                Date

*To be completed by Grievance Clerk.*

Grievance Appealed to the Superintendent _____ .
                                                Date

Grievance forwarded to the Superintendent for action _____ .
                                                            Date

R-34

To: Mr. Stabel
From: Joel Rifkin 95A5514
RE: Grievance of Jails Director
Date: 12-03-97

(8)

86381-97

Mr. Stabel Sir.

DEC 09 1997

On your last visit to the Jail We spoke of Mr. Ldenistor request to me that I file additional Grievances with request to my current Artical 78 in Wyoming Court

At that Time you suggested that I grieve the Docs DIRECTIVES directly. Enclosed you will find a Three part grievance with a Non judical soltion attached.

Please process this Grievance and forward it to the CORC for me.

I have additional Copies of these pages if you were there. Also please via in house mail send me the assigned grievance Number

Thank you for last Time

Joel Rifkin  95A5514  C3-6

PS My Best Wishes for the coming holidays for you and your Family

R-35

36581-97



PART I :   As To Docs Directive #933 Section 2 C.,
        subsection 3

DEC 09 1997

When housed in SHU Administrative Segregation inmates will be subject to the same rules and regulations as those DISCIPLINARY inmates...

This subsection is unconstitutional in that it violates the 14th Amendment of the US constitution as it relates to both its Due Process clause and Equal Protection Clause in that; an inmate who has NOT VIOLATED any Tier 3 rules is made subject to live under conditions of DISCIPLINE and thus is DEPRIVED of what would be his normal inmate liberties, cell property, and commissary priviledges.

R-36

36381-97

DEC 09 1997

PART II: The DOC definition of what exactly constitutes an IPC inmate versus Administrative Segregation inmate is unconstitutionally vague in that they are so loosly constructed ~~that they~~ that they are interchangeable

DOCS 4748 states:

An inmate who is a potential victim or a witness likely to be intimidated or who lacks the ability to live in the general facility community and who may, for good cause, be restricted from communication with the general inmate population, ...

DOCS 4933 S.C §§ 2

Administrative Segregation admission results from a determination by the facility that the inmates' presence in several population would pose a threat to the safety and security of the facility.

When placed in juxtaposition these two definitions are semantically the same in that an inmate who is a potential victim, or who lacks the ability of live in the several facility community ~~is~~ ALSO ~~(is)~~ would pose a threat to the safety and security of the facility

To further demonstrate the ambiguous nature of these

R-37

86381-97

DEC 09 1997

This definitions my placement in Administrative Segregat
based on the recommendation of Lieutenant Bari
on DOCS form 2167 Admin. Seg./IPC Recommendat
form reads as follows;

Due to the Notoriety, publicity and serious nature
associated with inmate Rifkin's Criminal convictions, the
introduction of Rifkin to General Population would be
disruptive and would not be conducive to maintaining
the integrity of security which is necessary at this
facility. The safety and well being of Rifkin is also a
strong consideration in this recommendation.

The first sentence of the Recommendation conforms
to Directive # 4933.

The Second sentence conforms to Directive # 4948.

THUSLY: my status could be either IPC or Ad. Seg.
and thus my housing status could be either or,
thus my being housed in Administrative Segregation
as opposed to the less restrictive IPC is an abuse
of discretion and an abuse of power and a
violation of Civil Rights under the color of the law
as to my protected liberty interests under both NYS
laws and the constitution of the US, in that I
could be IPC. and housed in the SHU and still
receive property or at least some property that could

R-38

36381-97

DEC 09 1997

The Security and safety needs of Attica CF, ie
4B inch drawing pencils, quality (acid-free) drawing paper,
origami folding paper, religious fasts and religious items

R.39

36381-97

DEC 09 1997

PART III: As to DOCS Directive 4933 Section D.

An inmate in Protective Custody Status may be housed in a SHU. inmates in this status shall be subject to the conditions of confinement as set forth in Section IV of Directive 4948, "Protective Custody Status.

Is Negated in part but not in its entirety by DOCS Directive 4948 Section IV Subsection N.

Personal Property. Inmates will be issued their personal property when assigned to Protective Custody Status, subject to safety and security considerations.

It is also further Negated in part by Docs Directive 4948 Section VI(B);

LOCAL RULES AND REGULATIONS. Each facility housing inmates in Protective Custody Status shall promulgate rules and regulation for care and custody and submit them to the Deputy Commissioner for Facility Operations for review and approval

THUSLY each facility has the ability to interpret DOCS Directive 4948 with some discretion and flexibility and subject to approval does not have to Adhere strictly to # 4948 and # 4933 SC § § 3 by classifying SHU inmate workers as IPC. As such the Administration of Attica CF is not bound by the exact wording of # 4933 SC § § 3 and uses this discretionary

R-40

86381-97

DEC 09 1997

loophole when assigning and designating SHU inmate worker. These inmates although housed in the SHU are allowed to posess personal in cell property along with receiving a standard commisary purchase and are allowed additional non work related out of cell time in the off Tier area of the SHU.

THUSLY Does Directive #4933 §C §§3 as written does not apply to ALL SHU inmates but only to the majority of these inmates and at the discretion or whim of the facility and as such TWO identically housed sets of inmates exist that are subject to different sets of rules and regulations this is a direct violation of the equal protection clause of the 14th Amendment to the US constitution in that the Treatment of these two sets or classes of inmates is blatently unequal.

R-41

36381-97

NON-JUDICIAL SOLUTION

DEC 00 1997

The DOCS could create a small carefully defined Unit within the confines of the SHU in where NON-DISCIPLINARY Administrative Segregation inmates and SHU inmate workers can be housed in such a way that their unit is seperate from and has no contact with DISCIPLINARY inmates.

The inmates on this "Short Teir" or "Admin. Seg. Teir" could have limited or restricted property and commissary privileges granted to them.

HOWEVER: Should such an inmate receive a DISCIPLINARY write up, he should be removed from that Unit to serve his "box time" or lose a commissary buy or dinner privilege.

Under this system those inmates who have done nothing wrong would not be made subject to discipline, deprivation punishment or punitive treatment which is undeserved.

R-42



# INMATE GRIEVANCE RESOLUTION COMMITTEE
## INVESTIGATION REPORT

NAME _Rifkin, J_ DIN # _95A6514_ LOC _C5-6_ GRIEVANCE # _36381_

PREPARED BY _D. Caryl_ Date _12/10/97_

REFERENCES:

1. _D.R. 4933_          4. _____

2. _____    5. _____

3. _____    6. _____

_____ _D.R. 4933 III C-3 Clearly States:_

_____ " _When housed in SHU, Administrative
Segregation inmates will be subject
to the same rules and regulations
as those Disciplinary Inmates who
have completed 30 days of Satisfactory
Adjustment._ "

PREVIOUS DECISIONS OR RULINGS _____

ADDITIONAL COMMENTS _____

R-43

| | |
|---|---|
| STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES | GRIEVANCE NO. **A-36381-97** |
| | FACILITY **ATTICA CORR. FACILITY** |
| **INMATE GRIEVANCE PROGRAM** | TITLE OF GRIEVANCE **Challenge Directives** |
| **SUPERINTENDENT** | SUPERINTENDENT'S SIGNATURE |
| GRIEVANT **J. RIFKIN** | DIN # **95-A-6514** |

| | |
|---|---|
| DATE FILED **12/09/97** |
| POLICY DESIGNATION ~~DEPARTMENTAL~~ ~~INSTITUTIONAL~~ |
| CLASS CODE **31** |
| DATE |
| HOUSING UNIT **CS/6** |

## GRIEVANCE DENIED:

I concur with the provisions of Directive 4933 C 3.  You have been placed in Administrative Segregation per the terms of Directive 4933 C 2.

Although you believe you should be determined to be in protective custody, the Facility has determined through reference to the above cited directive that you reside in Administrative Segregation Status.  Due to your challenge of these directives, this grievance is being referred to CORC for review.

CC:   J. Conway, DSS
       Lt. J. Bea
       Lt. R. Pikula

---

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk.  You have four (4) working days from receipt of this notice to file your appeal.  Please state why you are appealing this decision to C.O.R.C.

_____

_____

_____

GRIEVANT'S SIGNATURE                                        DATE

R-44

STATE OF NEW YORK

**DEPARTMENT OF CORRECTIONAL SERVICES**

THE HARRIMAN STATE CAMPUS

1220 WASHINGTON AVENUE

ALBANY, N.Y. 12226-2050

GLENN S. GOORD
COMMISSIONER

STEPHEN M. BERNARDI
DEPUTY COMMISSIONER
POLICY AND COMPLIANCE REVIEW

## MEMORANDUM

FROM:        Thomas G. Eagen, Assistant Director
             Inmate Grievance Program

SUBJECT:     Receipt of Appeal

DATE:
             J RIFKIN          95A6514       Date 01/09/98
             **ATTICA CF**
                 Your grievance A-36381-97 entitled
                 Challenge Directions
                 was rec'd by CORC on 01/05/98

--------------------------------------------------------------

    A disposition will be sent to you after the grievance is
reviewed by CORC.

TGE/ps

R-45

# CASE HISTORY AND RECORD
# ATTICA CORRECTIONAL FACILITY

RIFKIN, J.          95-A-6514                          D-31
CAL: A-36381-97                                        References:
CHALLENGE DIRECTIVES                                   Dir. 4933

**GRIEVANCE:** 12/09/97

"This grievance directly is lodged against Directive #4933 and 4948.  This grievance is in three parts.  See attached 1-6."

## REQUESTED ACTION:

"The DOCS could create a small carefully defined unit within the confines of SHU in where non-disciplinary administrative segregation inmates and SHU inmate workers can be housed in such a way that their unit is separate from and has no contact with disciplinary inmates.  The inmates on this "short tier or Admin. Seg. Tier" could have limited or restricted property and commissary privileges granted to them."

## IGRC RECOMMENDATION: 12/12/97

Rec. #1.  Grievance denied.  Grievant is currently Adm. Seg. status and subject to Dir. 4933 III C3 which states:  "Admin. Seg. inmates will be subject to the same rules and regulations as those disciplinary inmates while housed in SHU."

Rec. #2.  Grievant raises valid issues and it is recommended that he pursue this issue with the courts.

## SUPERINTENDENT RESPONSE: *JHK*

I concur with the provision of Directive 4933 C 3.  You have been placed in Administrative Segregation per the terms of Directive 4933 C 2.  Although you believe you should be determined to be in protective custody, the Facility has determined through reference to the above cited directive that you reside in Admin. Seg. status.  Due to your challenge of these directives, this grievance is being referred to CORC for review.

## APPEAL:

None.

R-46

CASE HISTORY AND RECORD

GRIEVANCE # _A-36387-97_

NAME _J. RIFKIN_

DIN # _95A 6514_

TITLE _CHALLENGE   DIRECTIVES_

CODE _3(_     INSTITUTIONAL/DEPARTMENTAL _____

DATE FILED _12/9_

IGRC DATE _12/12_

SUPERINTENDENT DATE _12/15_

APPEAL DATE _N/A_

INVESTIGATION

    IGRC INVESTIGATION DATE _12/10_

    FACILITY POLICY # _____

    CAPTAIN DATE _____

    SUPERVISOR DATE _____

    EMPLOYEE DATE _____

    PRIOR CORC _____

    OTHER _____

IGP SUPERVISOR'S SIGNATURE _H. P. _____

R-47

| | STATE OF NEW YORK | GRIEVANCE NO. A-36381-97 | DESIG./CODE I/31 | DATE FILED 12/9/97 |
|---|---|---|---|---|
| | DEPARTMENT OF | FACILITY  Attica Corr. Fac. | | |
| | CORRECTIONAL SERVICES | | | |
| INMATE GRIEVANCE PROGRAM | | TITLE OF GRIEVANCE  Challenge Directives | | |
| CENTRAL OFFICE REVIEW COMMITTEE | | DIRECTOR'S SIGNATURE | | DATE 1/21/98 |

**ACTION REQUESTED:** "None specifically stated."

1/21/98

**GRIEVANT'S REQUEST UNANIMOUSLY DENIED AS WITHOUT MERIT**

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied as without merit.

CORC sustains the Superintendent, in part, i.e.:

Grievance denied.

I concur with the provisions of Directive 4933 C. 3. You have been placed in Administrative Segregation per the terms of Directive 4933 C.2.

Although you believe you should be determined to be in protective custody, the facility has determined through reference to the above cited Directive that you reside in Administrative Segregation status.

CORC asserts that the facility administration is in compliance with Department policy regarding Administrative Segregation.

p/k

R - 48

## A F F I R M A T I O N

MICHAEL A. SIRAGUSA, an attorney admitted to practice before this Court and the Courts of the State of New York, affirms under the penalties of perjury:

That he is an Officer of the State of New York, to wit, an Assistant Attorney General; that he is representing the respondents herein as attorney; that he has read the foregoing Answer and/or Return and knows the contents thereof, and that the same is true of his own knowledge, except to the matters herein stated to be alleged upon information and belief, and that as to those matters, he believes them to be true.

Deponent further says that the grounds of his belief as to all matters therein not stated upon his knowledge are based upon documents received by the deponent from the respondents and which are not in his possession.

_____
MICHAEL A. SIRAGUSA

Dated:    September 4, 1998

R-49

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
COUNTY OF ERIE       )ss.:
CITY OF BUFFALO      )

    LISA A. MERRIMAN, being duly sworn, says:

    I am over eighteen years of age and am a Law Department Document Specialist in the office of the Attorney General of the State of New York, attorney for the respondents herein.

    On the 4th day of September, 1998, I served the annexed Answer upon the attorney named below, by depositing a true copy thereof, properly enclosed in a sealed, post-paid wrapper, in the letter box of the Niagara Square Post Office in the City of Buffalo, New York, a depository under the exclusive care and custody of the United States Post Office Department directed to the said attorney at the address within the State respectively thereto designated by him for that purpose as follows:

        Norman P. Effman, Esq.
        Wyoming County-Attica
          Legal Aid Bureau, Inc.
        14 Main Street
        Attica, New York 14011

                    _____
                    LISA A. MERRIMAN

Sworn to before me this
4th day of September, 1998.

_____

R-50

STATE OF NEW YORK
SUPREME COURT    :    COUNTY OF WYOMING

---

In the Matter of the Application of
JOEL RIFKIN, #95A6514,

                 Petitioner,

    vs.

GLENN S. GOORD, Commissioner,
NYS Dept. of Correctional Services,

               Respondent.

---

**ANSWER**

Index No. 18,480

R-51

At a term of the Supreme Court held in and
for the County of Wyoming, at Attica, New
York, on the 9th of September, 1998.

PRESENT:    **HONORABLE MARK H. DADD**
**Acting Supreme Court Justice**

STATE OF NEW YORK
SUPREME COURT : COUNTY OF WYOMING

In the Matter of the Application of
**JOEL RIFKIN, #95-A-6514,** Petitioner

v.

GLENN S. GOORD, Acting Commissioner,
Department of Correctional Services, Respondent

FOR RELIEF PURSUANT TO ARTICLE 78 CPLR

Wyoming County Clerk's Office

I, Jean M. Krotz, Clerk of the County of Wyoming and of the Supreme
said County, and the Supreme Court, both Court of having a
common seal, do hereby certify that I have compared the annexed copy of
Order with the original entered

in this office, and that the same
is a correct transcript thereof and of the whole of said original in Testimony
Whereof, I have hereunto set my hand and affixed the seal of said County
and Courts, at Warsaw, N.Y.

*Jean M. Krotz*, Clerk

**Index No. 18,480**



For the Petitioner
WYOMING COUNTY-ATTICA LEGAL
AID BUREAU, INC.
Norman P. Effman, Director
14 Main Street
Attica, New York 14011

For the Respondent
DENNIS C. VACCO, Attorney General
by Michael A. Siragusa
Assistant Attorney General
Statler Towers, 4th Floor
107 Delaware Avenue
Buffalo, New York 14202

### MEMORANDUM AND JUDGMENT

By petition pursuant to Article 78 of the CPLR verified on May 22, 1998, Joel
Rifkin alleges that he has been confined in administrative segregation in violation of his
constitutional rights. Petitioner appeared with counsel assigned by an order to show cause
dated June 1, 1998 and contended that the Court should declare that the respondent's
regulations governing administrative segregation are unconstitutionally vague and that such
confinement has violated his rights to equal protection under the law and to be free from cruel
and unusual punishment. Petitioner has also submitted a copy of the decision imposing such
confinement pursuant to the letter of his attorney dated July 15, 1998. Respondent requests

R-52

Memorandum and Judgment                    -2-                    Index No. 18,480

that the petition be denied upon the answer dated September 4, 1998.

Petitioner was placed into administrative segregation by a decision, dated March 8, 1996, after a hearing was conducted in accordance with 7 NYCRR Part 254 and 7 NYCRR 301.4(a). There is no allegation that the hearing was conducted in violation of the procedures set forth in these regulations. Petitioner contends that the basis for imposing administrative segregation under 7 NYCRR 301.4(b) is unconstitutionally vague. He further contends that he should have been confined in the allegedly less restrictive confinement offered by protective custody status because he has essentially been found to be a potential victim of violence at the hands of other inmates. His arguments have been preserved in a formal grievance which was denied on January 21, 1998.

This action should be converted to an action for a declaratory judgment in so far as the petitioner challenges the constitutionality of the respondent's regulations (see Matter of Montgomery v. Coughlin, 194 A.D.2d 264, 268 [1993], appeal dismissed 83 N.Y.2d 905). Respondent's answer includes a defense under the statute of limitations. It is alleged that this action is untimely because it was commenced more than four months after the March 8, 1996 decision. However, petitioner's constitutional objections to the applicable procedures were raised in a grievance decided on January 21, 1998. In any event, respondent has failed to support the statute of limitations defense and the Court shall address the merits of the petition (see Matter of Edwards v. Coughlin, 191 A.D.2d 1044 [1993]; Matter of Kasiem v. Coughlin, 198 A.D.2d 888 [1993]; see also Matter of Zaro v. Coughlin, 195 A.D.2d 1003 [1993]).

The applicable regulation states that administrative segregation may be imposed upon "a determination by the facility that the inmate's presence in general population would pose a threat to the safety and security of the facility" (7 NYCRR 301.4[b]). The Court is of the opinion that this regulation is not unconstitutionally vague. New York courts have routinely reviewed administrative segregation hearings to determine whether or not a finding of a "threat to the safety and security of the facility" was based upon substantial evidence (see Matter of Rivera v. Mann, 224 A.D.2d 740 [1996]; Matter of O'Keefe v. Coombe, 233 A.D.2d 640 [1996]; Matter of Perez v. Selsky, 234 A.D.2d 844 [1996], motion for leave to appeal denied 89 N.Y.2d 811; Matter of LaFrance v. Coughlin, 204 A.D.2d 971 [1994]). Petitioner has not contended that the March 8, 1996 determination to place him in administrative segregation was not supported by substantial evidence.

Petitioner has failed to show that his remaining constitutional objections to his

R-53

Memorandum and Judgment                    -3-                    Index No. 18,480

confinement merit relief. Administrative segregation is not an unusual incident of prison life and prison officials have broad discretion in imposing such a measure to preserve security (see Hewitt v. Helms, 459 U.S. 460, 74 L.Ed.2d 675, 103 S.Ct. 864, 74 L.Ed.2d 675, 686-689 [1983]; see also Sandin v. Conner, 515 U.S. __, 132 L.Ed.2d 418, 115 S.Ct. 2293 [1995]). In exercising this subjective judgment, prison officials are not limited to the specific facts of one incident or the character of the confined inmate. They may consider other relationships within the institution even if the confined inmate has not committed any misconduct (see Hewitt v. Helms, supra, 74 L.Ed.2d 689-690). New York courts have approved prolonged administrative segregation decisions based upon an inmate's criminal record when imposed in accordance with the procedural protections of 7 NYCRR 301.4 and 7 NYCRR Part 254 (see Matter of Edmonson v. Coughlin, Wyoming County Supreme Court Index No. 16,361, Memorandum and Judgment dated February 10, 1993, annexed, affirmed 204 A.D.2d 1002 [1994], appeal dismissed 84 N.Y.2d 849; Matter of Smith v. Goord, __ A.D.2d __, 673 N.Y.S.2d 233 [1998]). Furthermore, such confinement need not be based upon new allegations of misconduct (see Matter of Francella v. Selsky, 236 A.D.2d 749 [1997]; Matter of Blake v. Coughlin, 189 A.D.2d 1016 [1993]; Matter of Garcia v. Kuhlmann, 205 A.D.2d 1025 [1994]).

        Thus, it does not appear that the petitioner has been subjected to any cruel and unusual punishment. Furthermore, there is no indication that segregation was imposed as a mere pretext or upon any improper factor or classification. Segregation was only imposed after a hearing and upon consideration of his record and his relationships with other inmates who had attacked him. It also appears that the hearing officer considered the alternative of protective custody and issued a rational reason for imposing administrative segregation: that it would promote security by reducing the petitioner's exposure to other inmates.

        NOW, THEREFORE, it is hereby

        ORDERED that this proceeding is converted to an action for a declaratory judgment; and it is further

        ADJUDGED AND DECLARED that the petitioner has failed to show that 7 NYCRR 301.4 is unconstitutional or that the procedures applied in this case violated his constitutional rights; and it is further

        ORDERED that the petition is otherwise denied.

DATED:      October 20, 1998
            Warsaw, New York

                                        _____
                                        Acting Supreme Court Justice

R-5A

At a term of the Supreme Court held
in and for the County of Wyoming,
at Attica, New York, on the 4th day
of November, 1992.

PRESENT: HONORABLE MARK H. DADD
              Acting Supreme Court Justice

STATE OF NEW YORK
SUPREME COURT : COUNTY OF WYOMING

----

In the Matter of the Application of
**SAM EDMONSON, #90-A-9397, Petitioner**

           v.                            Index No. **16,361**

THOMAS A. COUGHLIN, Commissioner,
Department of Correctional Services,
et al, Respondents

FOR RELIEF PURSUANT TO ARTICLE 78 CPLR

----

For the Petitioner
WYOMING COUNTY-ATTICA LEGAL
  AID BUREAU, INC.
Norman P. Effman, Director
14 Main Street
Attica, New York 14011

For the Respondents
ROBERT ABRAMS, Attorney General
by Andrew Lipkind
Assistant Attorney General
65 Court Street
Buffalo, New York 14202

## MEMORANDUM AND JUDGMENT

        Petitioner initiated this proceeding pursuant to Article 78 of the
CPLR to challenge his placement in administrative segregation in July, 1990.
The following pleadings have been submitted to the Court by petitioner's counsel,
assigned by an order to show cause dated December 21, 1990: the original peti-
tion verified on December 10, 1990; a _pro se_ supplemental petition, sworn to
on January 4, 1991, submitted upon the letter of counsel dated February 6,
1991; an amended petition verified on March 18, 1991; a second amended petition
verified on July 11, 1991; and a third amended petition verified on May 5, 1992.

Memorandum and Judgment        -2-        Index No. 16,361

Respondents have served answers dated March 6, 1991, March 26, 1991, July 29, 1991 and October 16, 1992. The record also includes numerous documents utilized by the respondents in their monthly review process under 7 N Y C R R 301.4(d).

This proceeding has been delayed by disclosure and dismissal motions which were resolved by decisions dated January 30, and August 12, 1992. Petitioner has withdrawn his original challenge to the hearing completed on July 22, 1990 which determined that he should be assigned to administrative segregation status. He continues to challenge the constitutionality of the review procedure established under 7 N Y C R R 301.4(d). He was kept in segregation for several months pursuant to this procedure. It is contended that this procedure did not satisfy the requirements of due process of law. Respondents initially argue that this matter is now moot because the petitioner has been returned to the general population. They otherwise contend that the petitioner's constitutional rights have not been violated because he enjoyed no protected liberty interest in remaining in the general population and, alternatively, that any such interest was afforded adequate procedural protection under applicable constitutional standards.

The Court has previously denied a motion to dismiss this proceeding as moot. That decision was based upon the petitioner's right to challenge the accuracy of records which indicated that he had been involved in an escape attempt. Petitioner, however, has in effect waived this right by withdrawing his challenge to the hearing which was based upon this alleged attempt. Thus, the Court must consider whether or not this proceeding is moot because the petitioner is in general population and any defect in the review procedure would not mandate expungement of the original determination.

The second amended petition includes a request that the Court declare the review procedures set forth in 7 N Y C R R 301.4(d) to be unconstitutional for failing to provide adequate procedural safeguards or standards to govern the exercise of administrative discretion. The respondents have never complained that it would be inappropriate to raise such a challenge to the face of the regulation in an Article 78 proceeding. Furthermore, this proceeding may be converted to a declaratory judgment action to address this claim (see 5 N.Y.Jur.2d, Article 78 and Related Proceedings, §18; see also Matter of Highway Tavern Corporation v. McLaughlin, 105 A.D.2d 122, 126 [1984]). A claim for such relief is not moot (see Rochester Poster Advertising Company, Inc. v. Town of Penfield, 51 A.D.2d 870 [1976]).

R-56

This Article 78 proceeding was properly commenced to challenge the legality of the petitioner's segregation pursuant to the procedures adopted under 7 NYCRR 301.4(d). The respondents took several months to produce the records which document how these procedures were applied in the petitioner's case. These records include memoranda issued by the Administrative Segregation Review Committee for the Attica Correctional Facility Review Committee between August 1990 and March 1991. These records indicate that four to six inmates were confined in such status at that facility each month. Thus, it appears that this case presents questions which are likely to recur. The respondents' position that this proceeding is moot could insulate such claims from judicial review. The Court, therefore, finds that it would be inappropriate to dismiss the petitions in so far as they challenge the constitutionality of the review process (see Matter of Beattie v. New York State Board of Parole, 39 N.Y.2d 445, 446-447 [1976]; Matter of Amato v. Ward, 41 N.Y.2d 469, 471 [1977]; Matter of Johnson v. Ward, 64 A.D.2d 186, 187-188 [1978]). All other procedural objections, however, are moot.

The Court further finds that the respondents have adopted regulations which have granted inmates a constitutionally protected liberty interest in remaining in the general population and not being placed in administrative segregation. The regulations state that such segregation "results from a determination by the facility that the inmates' presence in general population would pose a threat to the safety and security of the facility" (7 NYCRR 301.4[b]). This determination is made pursuant to a hearing conducted under Part 254 (see 7 NYCRR 301.4[a]). The procedures followed under Part 254 are those which are mandated for the imposition of punitive confinement under Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 [1974]). The regulations further dictate that such an evidentiary hearing "shall be conducted within 14 days of an inmate's admission to administrative segregation" and that specific reasons be given as to why such segregation is warranted (7 NYCRR 301.4[a], emphasis added). Under New York law, judicial review is available to determine whether or not the decision is supported by substantial evidence on the record (see CPLR §7803[4], §7804[g]; Matter of Robinson v. Leonardo, 179 A.D.2d 951 [1992]). Administrative review of the status shall be reviewed every seven days for the first two months of segregation and every thirty days thereafter (7 NYCRR 301.4[d]). Thus, the respondents have not merely adopted procedural guidelines for the unlimited exercise of administrative discretion (see Olim

v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813, 823 [1983]). The regulations mandate that the decision to impose administrative segregation be made in accordance with specific procedures and based upon "specific substantive predicates" (see Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675, 688 [1983]; Matiyn v. Henderson, 841 F.2d 31, 34-36, [2d Cir. 1988], certiorari denied 487 U.S. 1220, 101 L.Ed.2d 911, 108 S.Ct. 2876).

As previously noted, the petitioner no longer challenges the procedures followed in imposing administrative segregation or the sufficiency of the grounds for that determination. The regulations merely require that this status be reviewed by certain officials at specified intervals. The written results are forwarded to the superintendent for a final determination (7 NYCRR 301.4[d]).

It appears that the respondents are not obligated to dictate specific procedures for such review or limit the substantive predicates for the superintendent's decision under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Supreme Court of the United States has only required that administrative segregation "not be used as a pretext for indefinite confinement of an inmate". Periodic review need not involve the submission of further evidence or statements. "The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner—which will have been ascertained when determining to confine the inmate to administrative segregation—and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner." (Hewitt v. Helms, supra, 74 L.Ed.2d 675, 692). It thus appears that prison officials may retain broad discretion in determining whether or not continued confinement is justified in view of "a wide range of administrative considerations" (Hewitt v. Helms, 74 L.Ed.2d 675, 692).

The record does not show that administrative segregation was used merely as a pretext for the petitioner's continued confinement. Such segregation was imposed upon the determination that his presence in general population posed a security risk due to the notoriety of his criminal case and past escape attempts. There is no claim that such a record would not pose valid security concerns (see Matter of Robinson v. Leonardo, 179 A.D.2d 951 [1992]). The decision was primarily based upon June, 1990 newspaper articles detailing a plot to escape from a Brooklyn prison by hijacking a helicopter. There is no claim that insufficient evidence was presented to support these allegations

R-53

Memorandum and Judgment                    -5-                    Index No. 16,361

at the evidentiary hearing conducted in July, 1990. It is clear that such allega-
tions would continue to pose a valid security concern for an indefinite period
of time. Furthermore, prison officials were not obligated to accept further
proof of the nature of this continued risk or undertake a more formally
structured review under the standards set forth in Hewitt v. Helm (supra).

    NOW, THEREFORE, it is hereby

    ORDERED that the petition is denied.

DATED:    February *10*, 1993
          Warsaw, New York

                                                    _____
                                                    Acting Supreme Court Justice

R-59

IN THE MATTER OF

JOEL RIFKIN #95A6514 , PETITIONER

INDEX # 18480

-v-

GLENN S. GOORD , RESPONDENT
(For relief pursuant to Article 78/~~Habeas Corpus~~)

Pursuant to Rule X effective September 1, 1967 you are notified that you have the right to appeal the decision of this Court by filing a Notice of Appeal within 30 days after service of the Order in this matter, or written notice of its entry, pursuant to Sec. 5513 of the CPLR.

This Notice must be filed in the Wyoming County Clerk's Office.

If you are unable to pay the costs of an appeal, you have a right to apply for leave to appeal as a poor person to the Appellate Division, Fourth Department.

If you desire to have him do so, (your attorney) or (the Clerk of the Court) will see that a Notice of Appeal is prepared, filed, and served in your behalf.

Dated: 10/20/98

Mark H. Dadd

WYOMING COUNTY JUDGE

R-60

NOV - 6 1998

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

DENNIS C. VACCO
Attorney General

ERIN M. PERADOTTO
Assistant Attorney General in Charge

Telephone: (716) 853-8485

November 3, 1998

Norman P. Effman, Esq.
Wyoming County-Attica
Legal Aid Bureau, Inc.
14 Main Street
Attica, NY 14011

RE:  Mtr. of **RAFFAELE FORTE v. TRAVIS**, Index No. 18,550
     Mtr. of **LUIS AGOSTO v. GOORD**, Index No. 18,521
     Mtr. of **LUIS AGOSTO v. GOORD**, Index No. 18,519
     Mtr. of **LUIS AGOSTO v. GOORD**, Index No. 18,518
     Mtr. of **TYRONE MOTT v. TRAVIS**, Index No. 18,549
     Mtr. of **JOEL RIFKIN v. GOORD**, Index No. 18,480
     Mtr. of **MICHAEL BURRESS v. TRAVIS**, Index No. 18,565
     Mtr. of **EMANIA SHEPARD v. TRAVIS**, Index No. 18,559
     Mtr. of **HASAN RAQIYB v. GOORD**, Index No. 18,409
     Mtr. of **ALVIN TORRES v. TRAVIS**, Index No. 18,496
     Mtr. of **ERIC POOLE v. TRAVIS**, Index No. 18,556
     Mtr. of **IGNACIO RYNOSO v. GOORD**, Index No. 18,373
     Mtr. of **AKMIR GRAY v. TRAVIS**, Index No. 18,553
     Mtr. of **WILLIAM TAYLOR v. GOORD**, Index No. 18,491

Dear Mr. Effman:

    Enclosed and served upon you herewith please find the Orders
in regard to the above-captioned matters.

                        Very truly yours,

                        MICHAEL A. SIRAGUSA
                        Assistant Attorney General

MAS/jaj
Encs.

R-61

STATE OF NEW YORK          :     SUPREME COURT
APPELLATE DIVISION         :     FOURTH JUDICIAL DEPARTMENT

---

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

        Appellant,

                        MOTION FOR PERMISSION TO
                        APPEAL AS A POOR PERSON
   -V-

                        Index No. 18,480

GLENN GOORD, Acting Commissioner,
Department of Correctional Services,

        Respondents.

---

SIRS:

        PLEASE TAKE NOTICE THAT, upon the annexed affidavit of Norman P. Effman, Esq., sworn to the 8th day of July, 1999, the undersigned will move this Court on the 26th day of July, 1999 for an Order granting Appellant permission to proceed on this appeal as a poor person and to grant such other and further relief as this Court may deem proper and just.

DATED: July 8, 1999
      Attica, New York      Respectfully submitted,

TO: ELIOT SPITZER        NORMAN P. EFFMAN
    New York State Attorney  Attorney for Appellant
     General          Executive Director
                  WYOMING COUNTY-ATTICA
    ERIC DADD          LEGAL AID BUREAU
    Wyoming County Attorney  14 Main Street
                  Attica, New York 14011
Joel Rifkin, Attica Correctional Facility

R-62

```
STATE OF NEW YORK          :     SUPREME COURT
APPELLATE DIVISION         :     FOURTH JUDICIAL DEPARTMENT
```

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

       Appellant,

    -v-

                                 <u>AFFIDAVIT IN SUPPORT</u>

GLENN GOORD, Acting Commissioner,
Department of Correctional Services,

       Respondent.

```
STATE OF NEW YORK)
COUNTY OF WYOMING)   SS:
VILLAGE OF ATTICA)
```

       NORMAN P. EFFMAN, ESQ., being duly sworn deposes and says:

       1.  I am an attorney duly admitted to the practice of law in the courts of the State of New York and, as such, I am the Executive Director, WYOMING COUNTY-ATTICA LEGAL AID BUREAU, Attica, New York.

       2.  I was assigned as Appellant's attorney in the court below and I hereby make application to the Appellate Division, Fourth Judicial Department, for an Order for permission to proceed in this matter on Appellant's behalf as a poor person.

       3.  By Memorandum and Judgment of the Wyoming County, Supreme Court (Dadd, T.A.J.S.C.) entered on October 23, 1998 (a copy is attached hereto and made part hereof), the court below denied Appellant's Article 78 petition and a

R-63

Notice of Appeal was filed and served on the Attorney General's office on December 3, 1998 (a copy is attached hereto and made part hereof).

4. Appellant's present financial status and obligations are outlined in an Affidavit of Financial Status which is attached hereto and made part hereof.

5. This appeal merits this Court's review because the Appellant was placed into Administrative Segregation because the Respondent believed he may be a target of other inmates, inferring that he was in need of protective custody status pursuant to 7 N.Y.C.R.R. Section 330.2 and Section 330.3. However, his placement in administrative segregation denies Appellant of privileges which would otherwise be afforded to a protective custody inmate. Respondent's decision failed to cite the necessity of Appellant's placement in administrative segregation as a action to insure both the safety and security of the facility and the inmates housed in that facility pursuant to 7 N.Y.C.R.R. Section 301.4(b).

6. On the 8th day of July, 1999, this office mailed a completed copy of this motion to Eric Dadd, Wyoming County Attorney at his office at 11 Exchange Street, Attica,

R-64

New York and Eliot Spitzer, New York State Attorney General at his office at the Statler Towers, Buffalo, New York 14202.

_____
NORMAN P. EFFMAN, ESQ.
Executive Director

Sworn to before me this
8th day of July, 1999

_____
    NOTARY PUBLIC

JERRY ADER
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 2.28.2000

R-65

STATE OF NEW YORK            :    SUPREME COURT
APPELLATE DIVISION           :    FOURTH JUDICIAL DEPARTMENT

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

          Appellant,            RENEWED
                         MOTION FOR PERMISSION TO
                         APPEAL AS A POOR PERSON
   -V-
                         Index No. 18,480

GLENN GOORD, Acting Commissioner,
Department of Correctional Services,

          Respondent.

SIRS:

          PLEASE TAKE NOTICE THAT, upon the annexed

affidavit of Norman P. Effman, Esq., sworn to the 1st day of

October, 1999, the undersigned will move this Court on the

18th day of October, 1999 for an Order granting Appellant

permission to proceed on this appeal as a poor person and to

grant such other and further relief as this Court may deem

proper and just.

DATED: October 1, 1999        Respectfully submitted,
      Attica, New York

                    NORMAN P. EFFMAN
TO: ELIOT SPITZER              Attorney for Appellant
    New York State Attorney   Executive Director
     General                   WYOMING COUNTY-ATTICA
                   LEGAL AID BUREAU
    ERIC DADD                  14 Main Street
    Wyoming County Attorney    Attica, New York 14011

Joel Rifkin

R-66

STATE OF NEW YORK          :    SUPREME COURT
APPELLATE DIVISION         :    FOURTH JUDICIAL DEPARTMENT

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

        Appellant,

                                    AFFIDAVIT IN SUPPORT

    -v-

GLENN GOORD, Commissioner,
Department of Correctional Services,

        Respondent.

STATE OF NEW YORK)
COUNTY OF WYOMING)    ss:
VILLAGE OF ATTICA)

        NORMAN P. EFFMAN, ESQ., being duly sworn deposes
and says:

        1.  I am an attorney duly admitted to the practice
of law in the courts of the State of New York and, as such,
I am the Executive Director, WYOMING COUNTY-ATTICA LEGAL AID
BUREAU, Attica, New York.

        2.  I was assigned as Appellant's attorney in the
court below and I hereby make application to the Appellate
Division, Fourth Judicial Department, for an Order for
permission to proceed in this matter on Appellant's behalf
as a poor person.

R-67

3.  By Memorandum and Judgment of the Wyoming County, Supreme Court (Dadd, T.A.J.S.C.) entered on October 23, 1998 (a copy is attached hereto and made part hereof), the court below denied Appellant's Article 78 petition and a Notice of Appeal was filed and served on the Attorney General's office on December 3, 1998 (a copy is attached hereto and made part hereof).

4.  Appellant's present financial status and obligations are outlined in an Affidavit of Financial Status which is attached hereto and made part hereof.

5.  This appeal merits this Court's review because the Appellant was placed into Administrative Segregation because the Respondent believed he may be a target of other inmates, inferring that he was in need of protective custody status pursuant to 7 N.Y.C.R.R. Section 330.2 and Section 330.3.  However, his placement in administrative segregation denies Appellant of privileges which would otherwise be afforded to a protective custody inmate. Respondent's decision failed to cite the necessity of Appellant's placement in administrative segregation as an action to insure both the safety and security of the facility and the inmates housed in that facility pursuant to 7 N.Y.C.R.R. Section 301.4(b).

R-68

6.   On the 1st day of October, 1999, this office mailed a completed copy of this motion to Eric Dadd, Wyoming County Attorney at his office at 11 Exchange Street, Attica, New York and Eliot Spitzer, New York State Attorney General at his office at the Statler Towers, Buffalo, New York 14202.

NORMAN P. EFFMAN, ESQ.
Executive Director

Sworn to before me this
1st day of October, 1999

NOTARY PUBLIC

SUSAN K. JONES
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Sept. 30, 2000

R-69

At a term of the Supreme Court held in and for the County of Wyoming, at Attica, New York, on the 9th of September, 1998.

PRESENT:   **HONORABLE MARK H. DADD**
           **Acting Supreme Court Justice**

STATE OF NEW YORK
SUPREME COURT : COUNTY OF WYOMING



In the Matter of the Application of
**JOEL RIFKIN, #95-A-6514**, Petitioner

v.

GLENN S. GOORD, Acting Commissioner,
Department of Correctional Services, Respondent

FOR RELIEF PURSUANT TO ARTICLE 78 CPLR

Index No. 18,480

For the Petitioner
WYOMING COUNTY-ATTICA LEGAL
AID BUREAU, INC.
Norman P. Effman, Director
14 Main Street
Attica, New York 14011

For the Respondent
DENNIS C. VACCO, Attorney General
by Michael A. Siragusa
Assistant Attorney General
Statler Towers, 4th Floor
107 Delaware Avenue
Buffalo, New York 14202

## MEMORANDUM AND JUDGMENT

By petition pursuant to Article 78 of the CPLR verified on May 22, 1998, Joel Rifkin alleges that he has been confined in administrative segregation in violation of his constitutional rights. Petitioner appeared with counsel assigned by an order to show cause dated June 1, 1998 and contended that the Court should declare that the respondent's regulations governing administrative segregation are unconstitutionally vague and that such confinement has violated his rights to equal protection under the law and to be free from cruel and unusual punishment. Petitioner has also submitted a copy of the decision imposing such confinement pursuant to the letter of his attorney dated July 15, 1998. Respondent requests

R-70

that the petition be denied upon the answer dated September 4, 1998.

Petitioner was placed into administrative segregation by a decision, dated March 8, 1996, after a hearing was conducted in accordance with 7 NYCRR Part 254 and 7 NYCRR 301.4(a). There is no allegation that the hearing was conducted in violation of the procedures set forth in these regulations. Petitioner contends that the basis for imposing administrative segregation under 7 NYCRR 301.4(b) is unconstitutionally vague. He further contends that he should have been confined in the allegedly less restrictive confinement offered by protective custody status because he has essentially been found to be a potential victim of violence at the hands of other inmates. His arguments have been preserved in a formal grievance which was denied on January 21, 1998.

This action should be converted to an action for a declaratory judgment in so far as the petitioner challenges the constitutionality of the respondent's regulations (see Matter of Montgomery v. Coughlin, 194 A.D.2d 264, 268 [1993], appeal dismissed 83 N.Y.2d 905). Respondent's answer includes a defense under the statute of limitations. It is alleged that this action is untimely because it was commenced more than four months after the March 8, 1996 decision. However, petitioner's constitutional objections to the applicable procedures were raised in a grievance decided on January 21, 1998. In any event, respondent has failed to support the statute of limitations defense and the Court shall address the merits of the petition (see Matter of Edwards v. Coughlin, 191 A.D.2d 1044 [1993]; Matter of Kasiem v. Coughlin, 198 A.D.2d 888 [1993]; see also Matter of Zaro v. Coughlin, 195 A.D.2d 1003 [1993]).

The applicable regulation states that administrative segregation may be imposed upon "a determination by the facility that the inmate's presence in general population would pose a threat to the safety and security of the facility" (7 NYCRR 301.4[b]). The Court is of the opinion that this regulation is not unconstitutionally vague. New York courts have routinely reviewed administrative segregation hearings to determine whether or not a finding of a "threat to the safety and security of the facility" was based upon substantial evidence (see Matter of Rivera v. Mann, 224 A.D.2d 740 [1996]; Matter of O'Keefe v. Coombe, 233 A.D.2d 640 [1996];  Matter of Perez v. Selsky, 234 A.D.2d 844 [1996], motion for leave to appeal denied 89 N.Y.2d 811; Matter of LaFrance v. Coughlin, 204 A.D.2d 971 [1994]). Petitioner has not contended that the March 8, 1996 determination to place him in administrative segregation was not supported by substantial evidence.

Petitioner has failed to show that his remaining constitutional objections to his

R-71

Memorandum and Judgment                    -3-                    Index No. 18,480

confinement merit relief. Administrative segregation is not an unusual incident of prison life and prison officials have broad discretion in imposing such a measure to preserve security (see Hewitt v. Helms, 459 U.S. 460, 74 L.Ed.2d 675, 103 S.Ct. 864, 74 L.Ed.2d 675, 686-689 [1983]; see also Sandin v. Conner, 515 U.S. __, 132 L.Ed.2d 418, 115 S.Ct. 2293 [1995]). In exercising this subjective judgment, prison officials are not limited to the specific facts of one incident or the character of the confined inmate. They may consider other relationships within the institution even if the confined inmate has not committed any misconduct (see Hewitt v. Helms, supra, 74 L.Ed.2d 689-690). New York courts have approved prolonged administrative segregation decisions based upon an inmate's criminal record when imposed in accordance with the procedural protections of 7 NYCRR 301.4 and 7 NYCRR Part 254 (see Matter of Edmonson v. Coughlin, Wyoming County Supreme Court Index No. 16,361, Memorandum and Judgment dated February 10, 1993, annexed, affirmed 204 A.D.2d 1002 [1994], appeal dismissed 84 N.Y.2d 849; Matter of Smith v. Goord, __ A.D.2d __, 673 N.Y.S.2d 233 [1998]). Furthermore, such confinement need not be based upon new allegations of misconduct (see Matter of Francella v. Selsky, 236 A.D.2d 749 [1997]; Matter of Blake v. Coughlin, 189 A.D.2d 1016 [1993]; Matter of Garcia v. Kuhlmann, 205 A.D.2d 1025 [1994]).

        Thus, it does not appear that the petitioner has been subjected to any cruel and unusual punishment. Furthermore, there is no indication that segregation was imposed as a mere pretext or upon any improper factor or classification. Segregation was only imposed after a hearing and upon consideration of his record and his relationships with other inmates who had attacked him. It also appears that the hearing officer considered the alternative of protective custody and issued a rational reason for imposing administrative segregation: that it would promote security by reducing the petitioner's exposure to other inmates.

        NOW, THEREFORE, it is hereby

        ORDERED that this proceeding is converted to an action for a declaratory judgment; and it is further

        ADJUDGED AND DECLARED that the petitioner has failed to show that 7 NYCRR 301.4 is unconstitutional or that the procedures applied in this case violated his constitutional rights; and it is further

        ORDERED that the petition is otherwise denied.

DATED:        October 20, 1998
              Warsaw, New York

                                        _____
                                        Acting Supreme Court Justice

R-72

At a term of the Supreme Court held
in and for the County of Wyoming,
at Attica, New York, on the 4th day
of November, 1992.

PRESENT: HONORABLE MARK H. DADD
            Acting Supreme Court Justice

STATE OF NEW YORK
SUPREME COURT : COUNTY OF WYOMING

---

In the Matter of the Application of
SAM EDMONSON, #90-A-9397, Petitioner

        v.                                 Index No. **16,361**

THOMAS A. COUGHLIN, Commissioner,
Department of Correctional Services,
et al, Respondents

FOR RELIEF PURSUANT TO ARTICLE 78 CPLR

---

                              For the Petitioner
                              WYOMING COUNTY-ATTICA LEGAL
                                AID BUREAU, INC.
                              Norman P. Effman, Director
                              14 Main Street
                              Attica, New York 14011

                              *For the Respondents*
                              ROBERT ABRAMS, Attorney General
                              by Andrew Lipkind
                              Assistant Attorney General
                              65 Court Street
                              Buffalo, New York 14202

## MEMORANDUM AND JUDGMENT

      Petitioner initiated this proceeding pursuant to Article 78 of the
CPLR to challenge his placement in administrative segregation in July, 1990.
The following pleadings have been submitted to the Court by petitioner's counsel,
assigned by an order to show cause dated December 21, 1990: the original peti-
tion verified on December 10, 1990; a pro se supplemental petition, sworn to
on January 4, 1991, submitted upon the letter of counsel dated February 6,
1991; an amended petition verified on March 18, 1991; a second amended petition
verified on July 11, 1991; and a third amended petition verified on May 5, 1992.

R-73

Memorandum and Judgment             -2-                Index No. 16,361

Respondents have served answers dated March 6, 1991, March 26, 1991, July 29, 1991 and October 16, 1992. The record also includes numerous documents utilized by the respondents in their monthly review process under 7 NYCRR 301.4(d).

This proceeding has been delayed by disclosure and dismissal motions which were resolved by decisions dated January 30, and August 12, 1992. Petitioner has withdrawn his original challenge to the hearing completed on July 22, 1990 which determined that he should be assigned to administrative segregation status. He continues to challenge the constitutionality of the review procedure established under 7 NYCRR 301.4(d). He was kept in segregation for several months pursuant to this procedure. It is contended that this procedure did not satisfy the requirements of due process of law. Respondents initially argue that this matter is now moot because the petitioner has been returned to the general population. They otherwise contend that the petitioner's constitutional rights have not been violated because he enjoyed no protected liberty interest in remaining in the general population and, alternatively, that any such interest was afforded adequate procedural protection under applicable constitutional standards.

The Court has previously denied a motion to dismiss this proceeding as moot. That decision was based upon the petitioner's right to challenge the accuracy of records which indicated that he had been involved in an escape attempt. Petitioner, however, has in effect waived this right by withdrawing his challenge to the hearing which was based upon this alleged attempt. Thus, the Court must consider whether or not this proceeding is moot because the petitioner is in general population and any defect in the review procedure would not mandate expungement of the original determination.

The second amended petition includes a request that the Court declare the review procedures set forth in 7 NYCRR 301.4(d) to be unconstitutional for failing to provide adequate procedural safeguards or standards to govern the exercise of administrative discretion. The respondents have never complained that it would be inappropriate to raise such a challenge to the face of the regulation in an Article 78 proceeding. Furthermore, this proceeding may be converted to a declaratory judgment action to address this claim (see 5 N.Y.Jur.2d, Article 78 and Related Proceedings, §18; see also Matter of Highway Tavern Corporation v. McLaughlin, 105 A.D.2d 122, 126 [1984]). A claim for such relief is not moot (see Rochester Poster Advertising Company, Inc. v. Town of Penfield, 51 A.D.2d 870 [1976]).

R-74

This Article 78 proceeding was properly commenced to challenge the legality of the petitioner's segregation pursuant to the procedures adopted under 7 NYCRR 301.4(d). The respondents took several months to produce the records which document how these procedures were applied in the petitioner's case. These records include memoranda issued by the Administrative Segregation Review Committee for the Attica Correctional Facility Review Committee between August 1990 and March 1991. These records indicate that four to six inmates were confined in such status at that facility each month. Thus, it appears that this case presents questions which are likely to recur. The respondents' position that this proceeding is moot could insulate such claims from judicial review. The Court, therefore, finds that it would be inappropriate to dismiss the petitions in so far as they challenge the constitutionality of the review process (see Matter of Beattie v. New York State Board of Parole, 39 N.Y.2d 445, 446-447 [1976]; Matter of Amato v. Ward, 41 N.Y.2d 469, 471 [1977]; Matter of Johnson v. Ward, 64 A.D.2d 186, 187-188 [1978]). All other procedural objections, however, are moot.

The Court further finds that the respondents have adopted regulations which have granted inmates a constitutionally protected liberty interest in remaining in the general population and not being placed in administrative segregation. The regulations state that such segregation "results from a determination by the facility that the inmates' presence in general population would pose a threat to the safety and security of the facility" (7 NYCRR 301.4[b]). This determination is made pursuant to a hearing conducted under Part 254 (see 7 NYCRR 301.4[a]). The procedures followed under Part 254 are those which are mandated for the imposition of punitive confinement under Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 [1974]). The regulations further dictate that such an evidentiary hearing "shall be conducted within 14 days of an inmate's admission to administrative segregation" and that specific reasons be given as to why such segregation is warranted (7 NYCRR 301.4[a], emphasis added). Under New York law, judicial review is available to determine whether or not the decision is supported by substantial evidence on the record (see CPLR §7803[4], §7804[g]; Matter of Robinson v. Leonardo, 179 A.D.2d 951 [1992]). Administrative review of the status shall be reviewed every seven days for the first two months of segregation and every thirty days thereafter (7 NYCRR 301.4[d]). Thus, the respondents have not merely adopted procedural guidelines for the unlimited exercise of administrative discretion (see Olim

R-75

v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813, 823 [1983]). The regulations mandate that the decision to impose administrative segregation be made in accordance with specific procedures and based upon "specific substantive predicates" (see Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675, 688 [1983]; Matiyn v. Henderson, 841 F.2d 31, 34-36, [2d Cir. 1988], certiorari denied 487 U.S. 1220, 101 L.Ed.2d 911, 108 S.Ct. 2876).

As previously noted, the petitioner no longer challenges the procedures followed in imposing administrative segregation or the sufficiency of the grounds for that determination. The regulations merely require that this status be reviewed by certain officials at specified intervals. The written results are forwarded to the superintendent for a final determination (7 NYCRR 301.4[d]).

It appears that the respondents are not obligated to dictate specific procedures for such review or limit the substantive predicates for the superintendent's decision under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Supreme Court of the United States has only required that administrative segregation "not be used as a pretext for indefinite confinement of an inmate". Periodic review need not involve the submission of further evidence or statements. "The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner—which will have been ascertained when determining to confine the inmate to administrative segregation—and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner." (Hewitt v. Helms, supra, 74 L.Ed.2d 675, 692). It thus appears that prison officials may retain broad discretion in determining whether or not continued confinement is justified in view of "a wide range of administrative considerations" (Hewitt v. Helms, 74 L.Ed.2d 675, 692).

The record does not show that administrative segregation was used merely as a pretext for the petitioner's continued confinement. Such segregation was imposed upon the determination that his presence in general population posed a security risk due to the notoriety of his criminal case and past escape attempts. There is no claim that such a record would not pose valid security concerns (see Matter of Robinson v. Leonardo, 179 A.D.2d 951 [1992]). The decision was primarily based upon June, 1990 newspaper articles detailing a plot to escape from a Brooklyn prison by hijacking a helicopter. There is no claim that insufficient evidence was presented to support these allegations

R-76

Memorandum and Judgment          −5−                    Index No. 16,361

at the evidentiary hearing conducted in July, 1990. It is clear that such allega-
tions would continue to pose a valid security concern for an indefinite period
of time. Furthermore, prison officials were not obligated to accept further
proof of the nature of this continued risk or undertake a more formally
structured review under the standards set forth in Hewitt v. Helm (supra).

          NOW, THEREFORE, it is hereby

          ORDERED that the petition is denied.

DATED:    February 10, 1993
          Warsaw, New York

          _____
                    Acting Supreme Court Justice

R-77

IN THE MATTER OF

*Joel Rifkin #95A6514*, PETITIONER

-v-                                          INDEX # *18480*

*Glenn S. Goord*, RESPONDENT
(For relief pursuant to Article 78/~~Habeas Corpus~~)

       Pursuant to Rule X effective September 1, 1967 you are notified that you have the right to appeal the decision of this Court by filing a Notice of Appeal within 30 days after service of the Order in this matter, or written notice of its entry, pursuant to Sec. 5513 of the CPLR.

       This Notice must be filed in the Wyoming County Clerk's Office.

       If you are unable to pay the costs of an appeal, you have a right to apply for leave to appeal as a poor person to the Appellate Division, Fourth Department.

       If you desire to have him do so, (your attorney) or (the Clerk of the Court) will see that a Notice of Appeal is prepared, filed, and served in your behalf.

Dated: *10/20/98*

*Mark H. Dadd*
WYOMING COUNTY JUDGE

R-78

98 DEC -3 AM 2:17

WYOMING COUNTY CLERK
WARSAW N.Y.

STATE OF NEW YORK
SUPREME COURT      :      COUNTY OF WYOMING

---

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514 (ATTICA),

                              Petitioner,

                    NOTICE OF APPEAL

          -v-
                    Wyo. Co. Index No.  18,480

GLENN S. GOORD, Acting Commissioner,
Department of Correctional Services,

                              Respondent.

---

PLEASE TAKE NOTICE that the above-named

Petitioner hereby appeals to the Appellate Division,

Fourth Judicial Department from a Memorandum and

Judgment of the Wyoming County Supreme Court entered on

the 23rd day of October, 1998 denying Petitioner's

petition for Article 78 relief, and from each and every

part of this Memorandum and Judgment.

DATED:  December 3, 1998         NORMAN P. EFFMAN, ESQ.
          Attica, New York       Attorney for Petitioner
                                 Executive Director
                                 WYOMING COUNTY-ATTICA
TO:  DENNIS C. VACCO              LEGAL AID BUREAU
     Attorney General of the     14 Main Street
       State of New York         Attica, New York 14011
     Department of Law           (716) 591-1600
     107 Delaware Avenue
     Buffalo, New York  14202

     JOEL RIFKIN, #95-A-6514
     Attica Correctional Facility

R-79

_Supreme_ COURT OF _NEW YORK STATE_
COUNTY OF _WYOMING_

_Joel Rifkin_ , **Plaintiff**
(**Petitioner**)

**v.**

_E.R. DONNELLY_ , **Defendant**
(**Respondent**)
First Deputy Superintendent
Attica Correctional Facility

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR WAIVER
OF FILING AND SERVICE
FEES AND COSTS AND
TO PROCEED AS A POOR
PERSON**

**The undersigned, being duly sworn, says:**

1. **I am the plaintiff or petitioner in this case. This
   statement is made in support of my request (a) for waiver
   of the index number fee and/or any other filing and service
   fees and costs, and (b) to proceed in this case as a poor
   person,** and for the court to appoint counsel

2. **I support myself and** _No_ **others in my
   household.**

3. **My only source of income is (check one):**

   [  ] **Public assistance**

   [  ] **Social security/SSI**

   [ ✓ ] **Other** 2.25 per week DOCS Idle time pay

R-80

4.  The amount of income I receive each month is $___9,00___.


5.  Check one of the items below:

[ X ]  I do not have a bank account.

[   ]  I have a bank account with approximately $_____

in the account.


6.  I own the following property which has an estimated value

as indicated: [IF NONE, WRITE "NONE"]



LIST PROPERTY                          VALUE



___None___                    _____

_____            _____

_____            _____


7.  I have no other savings, property or assets.


8.  I am unable to pay the costs, fees and expenses necessary

to assert my rights in this case.


9.  No one else who is able to pay any required costs and fees

has a beneficial interest in the results of this case.


R-81

10.  The facts of my case are described in my court papers, which are attached.

11. I have made no prior request for this relief in this case.

WHEREFORE, I request (a) that all fees relating to the filing and service of this action or proceeding be waived, and (b) that I be permitted to proceed in this case in all respects as a poor person.

_____
(Signature)

ANTHONY W. ZIELINSKI
Notary Public, State of New York
Qualified in Wayne County
My Commission Expires April 20, 2000

Sworn to before me
this 19 day of June, 1998.

R-82

# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

DOCKET NO. CA 99-3473

PRESENT: GREEN, J. P., WISNER, PIGOTT, JR., HURLBUTT AND SCUDDER, JJ.

MATTER OF JOEL RIFKIN, PETITIONER-APPELLANT,

V

AUG 2 0 1999

GLENN S. GOORD, ACTING COMMISSIONER, DEPARTMENT OF CORRECTIONAL SERVICES, RESPONDENT-RESPONDENT.

Appellant having moved for permission to proceed as a poor person on the appeal taken herein from a judgment of the Supreme Court entered in the Office of the Clerk of the County of Wyoming on October 23, 1998,

Now, upon reading and filing the affidavit of Norman P. Effman sworn to July 8, 1999, the notice of motion with proof of service thereof, and due deliberation having been had thereon,

It is hereby ORDERED that the motion be, and the same hereby is, denied, with leave to renew on or before October 15, 1999, upon a showing of proof of indigency.

Entered: August 19, 1999                          CARL M. DARNALL, Clerk

R-83

Docket No. CA97-3473

| STATE OF NEW YORK | : | SUPREME COURT |
| APPELLATE DIVISION | : | FOURTH JUDICIAL DEPARTMENT |

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514

      Appellant,

                      STIPULATION TO THE RECORD
    against                Wyoming County Index 18,480

GLENN GOORD, Commissioner,
Department of Correctional Services,

      Respondent.

IT IS HEREBY STIPULATED that the following six (6)

items are all the necessary documents in the lower court

record needed for determination of this matter:

        1.    Order to Show Cause and Petition.

        2.    Answer and attachments.

        3.    Memorandum and Order.

        4.    Notice of Appeal.

        5.    Poor Person Application.

        6.    Order of Assignment.

DATED: October 29, 1999      Jerry M. Ader, Of Counsel to
Attica, New York             NORMAN P. EFFMAN,
                     Executive Director
              WYOMING COUNTY-ATTICA LEGAL
               AID BUREAU
              14 Main Street
              Attica, New York 14011

ELIOT SPITZER, Attorney
General
State of New York
Division of Appeals & Opinions
The Capitol
Albany, New York 12224-0341

BY

MICHAEL A. SIRAGUSA
Assistant Attorney General

# EXHIBIT C

# CA 99-3473

To be submitted

NEW YORK SUPREME COURT
APPELLATE DIVISION : FOURTH DEPARTMENT

---

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

　　　　　　　　Appellant,

　　　　　　-against-

GLENN GOORD, Commissioner, Department of
Correctional Services,

　　　　　　　　Respondent.

OAG No. 98-015790-A1

---

### BRIEF FOR RESPONDENT

　　　　　　　　ELIOT SPITZER
　　　　　　　　Attorney General of the
　　　　　　　　　State of New York
　　　　　　　　Attorney for Respondent
　　　　　　　　The Capitol
　　　　　　　　Albany, New York 12224
　　　　　　　　Telephone: (518) 474-8352

　　　　　　　　Date Completed: January 19, 2000

WAYNE L. BENJAMIN
Deputy Solicitor General

MARTIN A. HOTVET
Assistant Solicitor General

　　　　　of Counsel

*"Reproduced on Recycled Paper"*

i

## TABLE OF CONTENTS

**Page**

Preliminary Statement . . . . . . . . . . . . . . . . . . . . 1

Issue Presented . . . . . . . . . . . . . . . . . . . . . . . 2

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Decision of the Court Below . . . . . . . . . . . . . . . . . 4

ARGUMENT

     Petitioner's placement in administrative
     segregation as opposed to protective custody
     was not unconstitutional because it was
     rationally based upon the discretionary
     determination of prison officials that
     petitioner posed a threat to the safety and
     security of the prison . . . . . . . . . . . . . . . . 6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

Allen v Cuomo, 100 F3d 253 (2d Cir 1996)  . . . . . . . . . . . 9

Bell v Wolfish, 441 US 520 (1979) . . . . . . . . . . . . . . . 6

Cooper, Matter of v Smith, 63 NY2d 615 (1984) . . . . . . . . . 7

Francella, Matter of v Selsky, 236 AD2d 749 (3d Dept 1997)  . 6,9

Fridella, Matter of v Coughlin, 177 AD2d 872 (3d Dept 1991) . . 7

Hewitt v Helms, 459 US 460 (1983) . . . . . . . . . . . . . 5,6,9

Jackson v Meachum, 699 F2d 578 (1st Cir 1983) . . . . . . . . 10

McClary v Coombe, 4 F2d 195 (SDNY 1998) . . . . . . . . . . . 10

Sandin v Conner, 515 US 472 (1995)  . . . . . . . . . . . 5,6,11

Smith, Matter of v Goord, 250 AD2d 946 (3d Dept 1998),
 lv denied, 92 NY2d 810 (1998)  . . . . . . . . . . . . . . 6,10

Turner v Safley, 482 US 78 (1987) . . . . . . . . . . . . . . . 9

Wilson v Seiter, 501 US 294 (1991) . . . . . . . . . . . . . . 10


**New York Regulations**

7 NYCRR
     part 254 . . . . . . . . . . . . . . . . . . . . . . 3,5,10
     part 304 . . . . . . . . . . . . . . . . . . . . . . . . 11
     301.4  . . . . . . . . . . . . . . . . . . . . . . . passim
     301.4(b) . . . . . . . . . . . . . . . . . . . . . . . . 4
     301.4(d) . . . . . . . . . . . . . . . . . . . . . . . 10
     301.4(e) . . . . . . . . . . . . . . . . . . . . . . . 11
     303.1  . . . . . . . . . . . . . . . . . . . . . . . . 11
     303.2  . . . . . . . . . . . . . . . . . . . . . . . . 11
     304.3  . . . . . . . . . . . . . . . . . . . . . . . . . 8
     330.4(a) . . . . . . . . . . . . . . . . . . . . . . . . 8
     330.4(b) . . . . . . . . . . . . . . . . . . . . . . . . 8
     330.4(c) . . . . . . . . . . . . . . . . . . . . . . . . 8

NEW YORK SUPREME COURT
APPELLATE DIVISION : FOURTH DEPARTMENT
———————————————————

In the Matter of the Application of
JOEL RIFKIN, #95-A-6514,

                    Appellant,


          -against-


GLENN GOORD, Commissioner, Department of
Correctional Services,

                    Respondent.

OAG No. 98-015790-A1

———————————————————


BRIEF FOR RESPONDENT


Preliminary Statement


    Petitioner-appellant (petitioner) appeals from the judgment
of the Supreme Court, Wyoming County (Dadd, J) which converted
the proceeding to an action for a declaratory judgment, declared
that petitioner has failed to show that 7 NYCRR 301.4 is
unconstitutional or that the procedures applied in this case
violated his constitutional rights, and dismissed the petition.
Petitioner's confinement in administrative segregation, as
opposed to protective custody, which offers greater privileges,
including contact with other inmates, was rationally based on the
safety and security of the prison in view of the notoriety of
petitioner's conviction and the consequent attacks on him by
other inmates, all resulting in a need for the increased security
of administrative segregation as opposed to protective custody.

### Issue Presented

Was petitioner's placement in administrative segregation as opposed to protective custody unconstitutional where it was rationally based upon the discretionary determination of prison officials that petitioner posed a threat to the safety and security of the prison?

The court below held that respondent's rational determination that petitioner be placed in administrative segregation violated no constitutional prescriptions.

### Facts

Petitioner is an inmate in the Attica Correctional Facility (R9) (numbers in parentheses preceded by the letter "R" refer to pages in the Record on Appeal) who is a notorious mass murderer. He is serving sentences amounting to 203 years to life imposed by courts in Suffolk, Kings, Bronx, Nassau and Queens Counties in 1994-1996 following his convictions inter alia for seven murders; records show petitioner confessed to the murders of some 16 women (the court can take judicial notice of this crime and sentence data contained in the Department of Correctional Services records).

On February 9, 1996, Lieutenant Bartz filed a report recommending that petitioner be placed in administrative segregation. The report stated the following:

> Due to the notoriety, publicity and serious
> nature associated with inmate Rifkin's
> criminal convictions the introduction of
> Rifkin to general population would be

3

> disruptive and would not be conducive to
> maintaining the integrity of security which
> is necessary at this facility.  The safety
> and well-being of Rifkin is also a strong
> consideration in this recommendation (R16).

This recommendation was the subject of a hearing held on March 8, 1996 (7 NYCRR Pt 254), which resulted in a decision placing petitioner in administrative segregation (R10).  The reason given for the decision was:

> "Due to the notoriety of your conviction &
> the facts you indicated as to being attacked
> by inmates, it would be disruptive & non-
> conducive to facility security to place you
> in contact with other inmates at this time.
> It would also be injurious to your safety &
> well-being."  (Determination, annexed to pet.
> brief).

The determination also stated that the evidence relied upon included "(y)our testimony that your crimes received high notoriety, you have been attacked by inmates and your ID cards have been taken as 'souvenirs'" as well as "Lieutenant Kirkpatrick's testimony that IPC or PC would cause you to be in a 40 man company & recreate with them & that Admin. Seg. would be far less exposure to other inmates.  Admin Seg. is determined as appropriate for you." (Ibid.).

At the urging of petitioner's attorney (R18), on December 3, 1997, petitioner filed a grievance alleging in sum and substance that assigning him to administrative segregation, with conditions the same as those for disciplinary inmates, as opposed to involuntary protective custody with less restrictive conditions, violated his constitutional rights (R10-11, 17-25).

On December 19, 1997, the grievance was denied at the Superintendent level (R11, 44).  The Central Office Review Committee (CORC) affirmed the Superintendent's decision and denied the grievance on January 21, 1998 (R12).  CORC found that petitioner had been placed on Administrative Segregation in accordance with Directive 4933 (which embodies 7 NYCRR 301.4) and stated:

> Although you believe you should be determined to be in protective custody, the faculty has determined through reference to the above-cited Directive that you reside in Administrative Segregation status.
>
> CORC asserts that the facility administration is in compliance with Department policy regarding Administrative Segregation (R48).

The underlying proceeding was initiated by order to show cause dated June 1, 1998 (R5).  For his legal claims, petitioner alleged in sum and substance that respondent's decision to deny his grievance and keep him in administrative segregation as opposed to protective custody was arbitrary and capricious and denied him equal protection (T12-14).  Following respondent's Answer (R29-51), the court below issued its Memorandum and Judgment dated October 20, 1998 (R52-54).

### Decision of the Court Below

The court converted the proceeding to an action for declaratory judgment insofar as the petitioner challenged the constitutionality of respondent's regulations (R53).  The court held that 7 NYCRR 301.4(b) was not unconstitutionally vague (ibid).

Justice Dadd expressly noted that "prison officials have broad discretion * * * to preserve security" in making determinations involving administrative segregation (R54, citing <u>Hewitt v Helms</u>, 459 US 460 [1983] and <u>Sandin v Conner</u>, 515 US 472 [1995]).  Indeed, in exercising this "subjective judgment" prison officials are not limited to examining single incidents or an inmate's character:  "They may consider other relationships within the institution even if the confined inmate has not committed any misconduct (<u>see</u>, <u>Hewitt v Helms</u>, <u>supra</u>, 459 US at 474)".

Justice Dadd noted further that "New York courts have approved prolonged administrative segregation decisions based upon an inmate's criminal record when imposed in accordance with the procedural protections of 7 NYCRR 301.4 and 7 NYCRR part 254 (multiple citations omitted)" (R54).  Indeed, it was noted that administrative segregation "need not be based upon new allegations of misconduct (multiple citations omitted)" (R54).

The court further held that

> "it does not appear that petitioner has been subjected to any cruel and unusual punishment.  Furthermore, there is no indication that segregation was imposed as a mere pretext or upon an improper factor or classification.  Segregation was only imposed after a hearing and consideration of his record and his relationships with other inmates who had attacked him.  It also appears that the hearing officer considered the alternative of protective custody and issued a rational reason for imposing administrative segregation; that it would promote security by reducing the petitioner's exposure to other inmates" (R54).

6

Accordingly, upon conversion, the court declared that petitioner "failed to show that 7 NYCRR 301.4 is unconstitutional or that the procedures applied in this case violated his constitutional rights" (R54).

### ARGUMENT

> PETITIONER'S PLACEMENT IN ADMINISTRATIVE
> SEGREGATION AS OPPOSED TO PROTECTIVE CUSTODY
> WAS NOT UNCONSTITUTIONAL BECAUSE IT WAS
> RATIONALLY BASED UPON THE DISCRETIONARY
> DETERMINATION OF PRISON OFFICIALS THAT
> PETITIONER POSED A THREAT TO THE SAFETY AND
> SECURITY OF THE PRISON.

Petitioner was properly placed in administrative segregation to assure the safety and security of the prison.  As the court below properly stated, "(a)dministrative segregation is not an unusual incident of prison life and prison officials have broad discretion in imposing such a measure to preserve security" (R54, citing Hewitt v Helms, 459 US 460 [1983] and Sandin v Conner, 515 US 472 [1995]); see, Matter of Smith v Goord, 250 AD2d 946 (3d Dept 1998), lv denied, 92 NY2d 810 (1998); Matter of Francella v Selsky, 236 AD2d 749, 750 (3d Dept 1997).  Courts should be reluctant to second-guess the exercise of discretion by prison authorities making determinations uniquely within their expertise and essential to the safety and security of the prison.  As stated in Bell v Wolfish, 441 US 520, 548 (1979):

"[T]he problems that arise in the day-to-day
operation of a corrections facility are not
susceptible of easy solutions.  Prison
administrators therefore should be accorded
wide-ranging deference in the adoption and
execution of policies and practices that in
their judgment are needed to preserve
internal order and discipline and to maintain
institutional security. * * * `Such
considerations are peculiarly within the
province and professional expertise of
corrections officials, and, in the absence of
substantial evidence in the record to
indicate that the officials have exaggerated
their response to these considerations,
courts should ordinarily defer to their
expert judgment in such matters'."  441 US at
548.

Petitioner does not deny that he should be segregated from

the general population of inmates.  Rather, he argues that his

placement in administrative segregation as opposed to protective

custody status "was an arbitrary and capricious act resulting in

significantly more restrictive living conditions than were

reasonably necessary and violated appellant's rights to equal

protection under the law and due process" (Br, pp 7-8).

Petitioner is wrong.  Initially, we note that petitioner has

no right to placement in any particular type of segregation; this

is a matter entirely within the discretion of prison officials.

Cf.  Matter of Fridella v Coughlin, 177 AD2d 872, 874 (3d Dept

1991) (no statutory, constitutional or precedential right to

prior housing or programming); Matter of Cooper v Smith, 63 NY2d

615, 616 (1984) (no statutory, regulatory or precedential right

to a job).

Moreover, that there is a rational basis for his placement

in administrative segregation as opposed to protective custody is

8

the complete answer to his claim.  Keeping petitioner in administrative segregation rather than protective custody promotes security in the prison by significantly reducing his exposure to other inmates.  The administrative segregation hearing in this matter established unequivocally that protective custody is less secure.  Lieutenant Kirkpatrick testified that assignment to protective custody would mean that petitioner would be in a 40 man company with which he would recreate and that administrative segregation would offer "far less exposure to other inmates" (Hearing Determination Annexed to Petitioner's Brief).  Protective custody inmates are out of their cells "for a minimum of three hours per day" during which they have recreation, exercise and eat with the other inmates on their company.  7 NYCRR 330.4(a), (b), (c).  Special Housing Units, in which administrative segregation inmates are placed (7 NYCRR 301.4), are significantly more restrictive.  Inmates placed there have only one hour of exercise outside their cell per day and otherwise remain in their cells (see, 7 NYCRR 304.3).

In rejecting the protective custody alternative at his administrative segregation hearing in 1996, the hearing officer relied upon petitioner's increased exposure to inmates under protective custody.  In view of petitioner's testimony at the 1996 hearing that his crimes had made him notorious and that he had been attacked for his ID card, petitioner cannot deny that his exposure to other inmates is dangerous.  Once this rational basis for administrative segregation over protective custody

exists, the court's inquiry ends -- simply, the rational basis for the determination answers all of petitioner's claims, both constitutional and otherwise.

Petitioner's assertion that the greater security of administrative segregation is merely for the "convenience" of respondent (Br, p 6) is specious.  Respondent reasonably views the threat to petitioner as sufficiently serious to warrant the greater security of administrative segregation.  Petitioner has not and cannot show an abuse of discretion in that regard.  Moreover, independent of the need to protect him, petitioner ignores altogether that "rumor, reputation and even more imponderable factors" associated with him could "spark potentially disastrous incidents" which alone warrants the more restrictive placement of administrative segregation.  Matter of Francella v Selsky, 236 AD2d at 750, quoting Hewitt v Helms, 459 US at 744.

Petitioner's claim of a violation of equal protection necessarily fails in view of the security concerns underlying his assignment to administrative segregation.  There was no violation of equal protection because petitioner's confinement in administrative segregation was "reasonably related to a legitimate penological interest".  Allen v Cuomo, 100 F3d 253, 261 (2d Cir 1996), citing Turner v Safley, 482 US 78 (1987).

Petitioner also argues (Br, pp 9-11) that his placement in administrative segregation since 1996 amounts to cruel and unusual punishment.  That claim was not raised in his petition

(or grievance below) and may not be considered here. Moreover, the claim is unavailing on this record. The court below correctly noted (R54) that New York courts have approved prolonged administrative segregation based upon an inmate's criminal record when imposed in accordance with the procedural protections of 7 NYCRR 301.4 and 7 NYCRR pt 254. See, Matter of Smith v Goord, supra (imposition of indefinite administrative segregation following 15 year disciplinary penalty). Nor is petitioner's administrative segregation merely a pretext to punish him. The assignment has been reviewed on a monthly basis the whole time (7 NYCRR 301.4[d]) and prison officials continue to believe administrative segregation is necessary because of the security concerns arising from petitioner's notoriety.

In any event, the "Constitution * * * 'does not mandate comfortable prisons'" and the Eighth Amendment is not violated unless the conditions deprive an inmate of "the minimal civilized measure of life's necessities'". Wilson v Seiter, 501 US 294, 298 (1991). Federal appellate decisions show a "widely shared disinclination to declare even very lengthy periods of segregated confinement beyond the pale of minimally civilized conduct on the part of prison authorities". Jackson v Meachum, 699 F2d 578, 583 (1st Cir 1983). Petitioner's citation (Br, p 10) to McClary v Coombe, 4 F2d 195 (WDNY 1998) is utterly inapposite, as the issue there concerned procedural due process, not cruel and unusual treatment. Citing applicable Second Circuit authority, the court held a fact-finding hearing to determine whether a liberty

11

interest implicating due process was present under <u>Sandin v</u>
<u>Conner</u>.  There is no question in this case that petitioner
received the required process; indeed he raised no issue in that
regard in his grievance or Article 78 petition.

Here, petitioner's administrative confinement is comparable
to satisfactory adjustment in SHU (7 NYCRR § 301.4[e]), including
the additional "items/privileges" spelled out in 7 NYCRR
§§ 303.1-303.2.  Food, exercise, medical services, personal
hygiene (showers, etc.), laundry, law library services, notary
public services, religious counseling services, education (cell
study programs), general library services, correspondence
privileges, and access to the grievance mechanism are all
provided.  <u>See</u>, 7 NYCRR part 304, "Services".  These privileges
do not come close to meeting the "barbarous" standard necessary
to show an Eighth Amendment violation.  Nor, as petitioner claims
(Br, p 9), is it necessary to provide a fact finding hearing --
the regulations spell out petitioner's rights and privileges.
Thus, the court below held "it does not appear that petitioner
had been subjected to any cruel and unusual punishment" (R54).

In sum, petitioner's administrative segregation is necessary
to the safety and security of the institution and violates no
constitutional proscriptions.

12

## CONCLUSION

**THE JUDGMENT SHOULD BE AFFIRMED.**

Date Completed: Albany, New York
                January 19, 2000

                    Respectfully submitted,

                    **ELIOT SPITZER**
                    **Attorney General of the**
                    **State of New York**
                    **Attorney for Respondent**

            By: _____
                    **MARTIN A. HOTVET**
                    **Assistant Solicitor General**

**WAYNE L. BENJAMIN**
**Deputy Solicitor General**

**MARTIN A. HOTVET**
**Assistant Solicitor General**

            of Counsel

            **"Reproduced on Recycled Paper"**

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Joel Rifkin,

                    Plaintiff,

          -against-

GLENN GOORD, Commissioner of the New York
State Department of Correctional Services,

                    Defendant.

99 CIV 6479

**AFFIDAVIT**

---

State of New York  )
                   )ss.:
County of Albany   )

          GLENN S. GOORD, being duly sworn, deposes and says that:

          1.     I am the Commissioner of the New York State Department of Correctional Services ("DOCS") and have served in that capacity since December 3, 1996. I was appointed Acting Commissioner on April 16, 1996. Prior to that, I served as the Deputy Commissioner for Facility Operations since 1988, except, however, from the period covering March 31, 1995, through January 11, 1996, when I was out of State service entirely and was employed in the private sector. Except as otherwise indicated above, I have been employed in the Central Office for DOCS since 1985 and, prior to that, I worked in a number of correctional facilities for approximately 13 years.

          2.     I make this affidavit in support of my motion for summary judgment in the above-captioned action, on the grounds that I was not personally involved in the alleged conduct over which plaintiff is suing herein. This affidavit is based upon my personal knowledge and upon information provided to me by staff gleaned from DOCS' records.

3.    Pursuant to New York Correction Law Sections 5 and 7, I am the Chief Executive Officer of the New York State Department of Correctional Services, responsible for the overall management of the Department.  The day-to-day operation of each of the Department's correctional facilities is overseen by the superintendent of his/her respective correctional facility.  The day-to-day operation of each of the offices, divisions and bureaus within the Department is the direct responsibility of, and overseen by, the head of that particular office, division or bureau.

4.    It is my understanding that Plaintiff Joel Rifkin alleges that I was involved in the decision concerning his placement into Administrative Segregation while an inmate at the Attica Correctional Facility.  This allegation is incorrect.  The decision to place an inmate in Administrative Segregation and continue that placement is made at the facility by facility staff.    Review of the decision to place the inmate into Administrative Segregation, or continue his/her placement there,  also occurs at the facility pursuant to 7 NYCRR §301.4.  At no time was I ever involved in the decision to place inmate Rifkin in Administrative Segregation, or continue such placement.

_____
Glenn S. Goord
Commissioner


Sworn to before me this
18th day of March, 2004.

_____
Notary Public

JUNE E. BURTT
Notary Public, State of New York
No. 01BU4750167
Qualified in Schenectady County
Commission Expires Feb 28, 20 06

# EXHIBIT 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOEL RIFKIN,

                              Plaintiff,                    **AFFIDAVIT**

          -vs-                                             99-CV-6479L(B)

GLENN S. GOORD, et al.,
                              Defendants.

_____

STATE OF NEW YORK    )
COUNTY OF NEW YORK ) ss.:

          GAIL HALLERDIN, being duly sworn, deposes and says that:

          1. I am one of the defendants in the above-captioned matter and make this

affidavit upon personal knowledge in support of my motion for summary judgment,

pursuant to Rule 56 of the Federal Rules of Civil Procedure.

          2. At present, I am employed by the New York State Office of Children and

Family Services as an Assistant Commissioner.

          3. In 1996, I was employed by the New York State Department of Correctional

Services as a Commissioner's Hearing Officer. My duties included conducting hearings

to determine whether an inmate should be placed in Administrative Segregation,

pursuant to the procedures established by 7 N.Y.C.R.R. §301.4 and Part 254.

          4. I conducted such a hearing with respect to the plaintiff herein, Joel Rifkin.

The hearing was commenced on February 21, 1996 and was concluded on March 8,

1996. After the taking of testimony and the consideration of the evidence adduced at

the hearing, I determined that the plaintiff should be maintained in administrative

segregation based upon the notoriety of his crimes and the fact that he had been attacked by other inmates in other facilities.

5. I specifically deny the plaintiff's contention that my decision was ordered, or in any manner influenced by the Department of Correctional Services Central Office. At no time did I communicate with Central Office with respect to the plaintiff's proposed placement. My determination was based solely upon the evidence adduced at the plaintiff's hearing.

GAIL HALLERDIN

Sworn to before me this
day of March, 2004

Notary Public
FRED LEVITAN
Public State of New York
No. 31 4847585
Qualified in New York County
Commission Expires .........
9/30/06